RAY, J.
 

 Duane Lamar Smith (Appellant) challenges the judgment and sentence entered pursuant to the jury’s verdict finding him guilty of felony battery, contending he is entitled to a new trial on two grounds. First, after Circuit Judge Wright allegedly orally indicated bias against Appellant immediately before jury selection, defense counsel did not move to disqualify the judge, and the same judge presided over voir dire, after which a successor judge conducted the guilt and sentencing phases of the trial. Because the record demonstrates the attorneys, with Appellant’s knowledge and affirmative agreement, acquiesced to Judge Wright’s decision to preside over jury selection, and defense counsel did not seek to disqualify the judge, we conclude without further discussion that the first issue was affirmatively waived for appeal and did not involve fundamental error.
 
 See Denmark v. State,
 
 656 So.2d 166 (Fla. 1st DCA 1995). On the second issue, the trial court gave an
 
 *381
 
 inapplicable jury instruction and misread another instruction and, in so doing, denied Appellant a fair trial and committed fundamental error. We are constrained to reverse the judgment and sentence and remand for a new trial.
 
 See Vowels v. State,
 
 32 So.3d 720 (Fla. 5th DCA 2010).
 

 FACTS AND PROCEDURAL BACKGROUND
 

 An amended information charged Appellant with aggravated battery, a second-degree felony, arising from an August 15, 2009, incident involving him and Mandy Lynn Young. The charging document alleged Appellant “did actually and intentionally touch or strike” Young against her will, “and in so doing intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement,” in violation of section 784.045(l)(a)l., Florida Statutes (2009).
 

 Appellant and Young were dating at the time of the incident that led to the charge. When Young confirmed Appellant was also seeing other women and, in fact, had fathered children with several of them, she decided to tell Appellant she was seeing someone else too. Appellant and Young agreed to meet and discuss their relationship. On August 14, 2009, the couple drove together to a motel. At the trial, their stories diverged significantly concerning what happened inside the motel room and in the nearby breezeway.
 

 Young testified that as she and Appellant, who had been drinking alcohol, sat in the room discussing their relationship, he became upset and threw a liquor bottle at her, hitting her left hip. He then beat her on the face and sides, drawing blood. When Young hid in the bathroom, Appellant attacked her again and yelled that he felt tempted to “slice her up.” When Young returned to the bedroom, Appellant threw the bottle again, shattering the glass. Appellant complied when Young asked him to leave the room, but he soon texted her to say he had left his keys in her locked car. Young exited the room and was walking along the breezeway to the parking lot when Appellant approached and asked her whether things were over between them. When she responded, “Yes, we’re done,” Appellant punched her three or four times in the right eye, knocking her against the wall and causing her to fall. Running toward the motel office, Young flagged a deputy and was transported to the hospital. She received stitches to her right eye and had bruises over several parts of her body. Young attributed all of her injuries to Appellant and denied hitting him at any time as he physically attacked her.
 

 The defense, on the other hand, asserted that Young’s injuries arose solely from her own anger-induced acts and carelessness, or from Appellant’s self-defense. Appellant testified that in the motel room, he had listened to what Young had to say but, at some point, he gave a sarcastic “bye.” Young stood in front of him and started poking his head with both of her hands. As Appellant grabbed Young’s wrists, she pulled back, and when he released her, Young hit herself on the ear and drew blood. When Appellant picked up the unopened liquor bottle and tried to leave, Young grabbed him, pulled him back into the room, and scratched his neck as he resisted. After a brief argument, he announced, “I’m gone,” and threw the bottle to the floor before walking out. Appellant denied beating Young.
 

 According to Appellant, after leaving the room, he texted Young about retrieving his keys from her car. When Appellant knocked on the room door, Young came out and followed him toward the parking lot. On the breezeway, she grabbed Appellant’s hand and wrist and said, “Wait,
 
 *382
 
 can we talk about it, can we work this out?” He urged her to leave him alone, and as Appellant turned to leave, Young delivered the first lick, catching Appellant off-guard and striking his neck. When Young threw her fist toward him, Appellant ducked, grabbed her by the wrist and back, and pushed her toward the wall. Young lunged toward him but slipped, falling face-forward to the ground. When Appellant tried to lift her, Young told him to leave her alone. He retrieved his keys and returned to where Young had fallen, but she was gone. He went to the door of the motel room, called Young’s name (getting no response), and left her car keys at the door. Appellant denied hitting Young in the eye or head, using his hands and fists to beat her, intentionally touching her with the intent to cause her any bodily harm, or making threatening remarks to Young. He admitted having seven prior felony convictions, one involving a crime of dishonesty.
 

 Deputy Allen testified he had encountered Young running and screaming for help on the motel breezeway. Blood covered the right side of her face, and she had a large cut and swelling around her eye. The deputy retraced the couple’s path and found blood drops on the walkway outside the room and a shattered liquor bottle inside. Otherwise, he said the motel room did not appear to be in disarray.
 

 After denying the motion for judgment of acquittal, the trial court orally instructed the jury on the aggravated battery charge and the lesser-included offenses of felony battery and battery. After informing the jury that an issue in this case was whether Appellant acted in self-defense, the court read
 
 Florida Standard Jury Instructions (Criminal)
 
 § 3.6(g) (on the justifiable use of non-deadly force), including the following language:
 

 The use of non-deadly force is not justified if you find Duane Lamar Smith was attempting to commit, committing, or escaping after the commission of an aggravated battery.
 

 Id.
 
 This instruction appeared also in the written jury instructions. Defense counsel did not object, and the instructions continued. The court defined aggravated battery and instructed that the “[u]se of non-deadly force is not justified if you find [Appellant] initially provoked the use of force against himself, unless the force asserted towards the defendant was so great that he reasonably believed that he was in imminent death or great bodily [sic] and had exhausted every reasonable means to escape the danger, other than using non-deadly force”; or “in good faith the defendant withdrew from physical contact with Mandy Young and indicated clearly to Mandy Young that he wanted to withdraw and stop the use of non-deadly force, but Mandy Young continued or resumed the use of force.” In determining whether Appellant was justified in using non-deadly force, the jury was to “judge him by the circumstances by which he was surrounded at the time the force was used.” In assessing the issue of self-defense, the jury could consider Appellant’s and Young’s “relative physical abilities and capacities.” The court concluded the instructions on the use of non-deadly force as follows, without an objection:
 

 However, if from the evidence you are convinced that the Defendant
 
 was justified
 
 in the use of non-deadly force, then you should find the Defendant guilty if all the elements of the charge have been proven.
 

 (Emphasis added).
 

 The jury found Appellant guilty of a lesser-included offense, felony battery,
 
 i.e.,
 
 it determined that Appellant actually and intentionally touched or struck Young
 
 *383
 
 against her will, resulting in great bodily harm, permanent disability, or permanent disfigurement, but that he did not intentionally or knowingly cause the victim harm.
 
 See
 
 § 784.041(1), Fla. Stat. (2009). The court adjudicated Appellant guilty and sentenced him to 73.6 months’ incarceration. This direct appeal ensued.
 

 THE LAW
 

 Jury instructions are subject to the “contemporaneous, specific objection” rule.
 
 See
 
 Fla. R.Crim. P. 3.390(d);
 
 Olivera v. State,
 
 58 So.3d 352, 353 (Fla. 1st DCA 2011). Appellant argues for the first time on appeal that the trial court erroneously instructed the jury on the justifiable use of non-deadly force by reading the inapplicable “forcible felony” instruction. Because this issue was not preserved, Appellant must demonstrate the error is fundamental.
 
 See Reed v. State,
 
 837 So.2d 366, 370 (Fla.2002);
 
 State v. Delva,
 
 575 So.2d 643, 644-45 (Fla.1991). When it involves jury instructions, “fundamental error” analysis considers the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel.
 
 See Garzon v. State,
 
 939 So.2d 278, 283 (Fla. 4th DCA 2006),
 
 approved,
 
 980 So.2d 1038 (Fla.2008);
 
 Prudent v. State,
 
 974 So.2d 1142, 1144 (Fla. 3d DCA 2008). We review
 
 de novo
 
 a claim of fundamental error.
 
 See Elliot v. State,
 
 49 So.3d 269, 270 (Fla. 1st DCA 2010).
 

 To the extent the trial court gave the Florida standard jury instructions on the justifiable use of non-deadly force, Appellant alleges only one error. Giving the “forcible felony” instruction — that “[t]he use of non-deadly force is not justified if you find [that Appellant] was attempting to commit, committing, or escaping after the commission of an Aggravated Battery” — in Appellant’s case was error.
 
 See Giles v. State,
 
 831 So.2d 1263, 1265 (Fla. 4th DCA 2002). Appellant complains also of the trial court’s misreading of one section of this same standard instruction, which actually states:
 

 However, if from the evidence you are convinced that the Defendant
 
 was not justified
 
 in the use of non-deadly force, then you should find the Defendant guilty if all the elements of the charge have been proven.
 

 (Emphasis added). Instead, the court told the jury the opposite: if the evidence demonstrated “that the defendant was justified in the use of non-deadly force,” then it should find Appellant guilty.
 

 ANALYSIS
 

 Self-defense is “an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense.”
 
 Mosansky v. State,
 
 33 So.3d 756, 758 (Fla. 1st DCA 2010). In asserting self-defense, Appellant acknowledged doing the act charged but sought to justify it as necessary to protect himself from harm.
 
 See Hopson v. State,
 
 127 Fla. 243, 168 So. 810, 811 (1936). To understand why the “forcible felony” instruction does not apply and should not have been read to Appellant’s jury, we look first to the pertinent statutes:
 

 Use of force in defense of person. — A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to him
 
 *384
 
 self or herself or another or to prevent the imminent commission of a forcible felony; or
 

 (2) Under those circumstances permitted pursuant to s. 776.013.
 

 § 776.012, Fla. Stat. (2009). Another provision states, however:
 

 The justification described in the preceding sections of this chapter is not available to a person who:
 

 (1) Is attempting to commit, committing, or escaping after the commission of, a forcible felonyf.]
 

 § 776.041(1), Fla. Stat. (2009).
 

 Although a “forcible felony,” as used in this chapter, includes aggravated battery,
 
 see
 
 section 776.08, Florida Statutes (2002) and (2009), “the plain language of section 776.041 showfs] that it is applicable only under circumstances where the person claiming self-defense is engaged in another, independent ‘forcible felony" at the time.”
 
 Giles v. State,
 
 831 So.2d at 1265;
 
 see Perkins v. State,
 
 576 So.2d 1310 (Fla.1991). Citing
 
 Giles,
 
 the Florida Supreme Court amended and clarified the instruction on the justifiable use of non-deadly force in March 2008, two years before Appellant’s trial.
 
 See In re Standard Jury Instructions in Criminal Case
 
 s—Re
 
 port No. 2007-3,
 
 976 So.2d 1081, 1087 (Fla.2008) (expressly stating the “forcible felony” instruction is to be given only if the defendant is charged with an independent forcible felony).
 

 Giles’ case, like Appellant’s, was not one where the alleged aggravated battery occurred while the defendant was attempting to commit, committing, or escaping after the commission “of some other independent forcible felony.” Thus, it clearly was error under section 776.041(1) in Giles’ and Appellant’s trials to give the challenged instruction.
 
 See Giles,
 
 831 So.2d at 1265;
 
 see Marshall v. State,
 
 604 So.2d 799, 803 (Fla.1992) (holding that the section 776.041(1) jury instruction was proper on a claim of self-defense to the charge of felony murder, where the underlying felonies were burglary and aggravated battery);
 
 Davis v. State,
 
 886 So.2d 332 (Fla. 5th DCA 2004) (on mot. for reh’g);
 
 Barnes v. State,
 
 868 So.2d 606, 607-08 (Fla. 1st DCA 2004).
 
 Giles
 
 explained why the instruction at issue prejudiced the defense:
 

 The instruction given improperly told the jury that the very act Giles sought to justify itself precluded a finding of justification. Essentially, the jury was instructed that 776.041(1) would apply to preclude a self-defense claim, when it is claimed that the acts with which the defendant is charged are themselves committed in appropriate self-defense. Thus, even if the jury found that Giles’ act of aggravated battery was committed in self-defense, then the use of force was not justifiable because the act itself is a forcible felony. This reading, however, is erroneous because the proper test for determining the applicability of the instruction is not whether the self-defense act itself could qualify as a forcible felony, but whether, at the time of the self-defense, the accused was engaged in a separate forcible felonious act.
 

 831 So.2d at 1266. Given the existence of some evidence supporting Giles’ theory of self-defense, the Fourth District Court concluded he was entitled to an instruction on the law applicable to that theory of defense. Because this was not harmless error, the court reversed Giles’ conviction and remanded for a new trial.
 
 See id.
 

 Although the reasoning in
 
 Giles
 
 explaining why the instruction did not apply and actually prejudiced the defense is relevant to Appellant’s case,
 
 Giles
 
 is materially distinguishable, in that Giles’ counsel timely objected after the “forcible felony” instruc
 
 *385
 
 tion was given, allowing the appellate court to conduct “harmless error” analysis.
 
 See id.
 
 at 1264, 1266. The appropriate (and binding) analysis for gauging the effect of the improper instruction in Appellant’s case was presented in
 
 Martinez v. State,
 
 981 So.2d 449 (Fla.2008).
 

 The State charged Martinez with attempted premeditated murder and aggravated battery with a deadly weapon for the single act of stabbing his girlfriend.
 
 See
 
 981 So.2d at 450. At the trial, Martinez asserted self-defense, among other defenses.
 
 Id.
 
 Without an objection, the court gave the “forcible felony” instruction.
 
 Id.
 
 The jury found Martinez guilty of attempted first-degree premeditated murder.
 
 Id.
 
 After the Third District Court found no fundamental error, the Florida Supreme Court accepted review based on express and direct conflict with other district courts’ decisions holding, without limitation or qualification, that giving the “forcible felony” instruction when the defendant had committed only one forcible act necessarily constitutes fundamental error.
 
 See id.
 
 at 450-51. Before determining the extent and impact of the jury instruction error, the Supreme Court in
 
 Martinez
 
 reviewed the evidence adduced and the trial strategies used in that case.
 

 During the trial, Martinez asserted, in part, that his girlfriend had attacked him with scissors, requiring him to use deadly force for self-protection. Under the self-defense instruction given to Martinez’s jury, if the jury found his actions constituted a justifiable use of force against his girlfriend, it would serve as a defense to the charges.
 
 See id.
 
 at 458. Even so, the trial court then told the jury that Martinez’s use of deadly force would not be justified if he was trying to commit attempted murder and/or aggravated battery, the very crimes the defense tried to justify as having been committed in self-defense.
 
 Id.
 
 The Supreme Court opined the instruction very likely confused Martinez’s jury, prevented the jury from finding a lawful basis for self-defense, and effectively resulted in a directed verdict on the affirmative defense of self-defense.
 
 See id.
 
 Even if the jury believed Martinez’s account that he was not the provoker and his girlfriend attacked him first, the “forcible felony” instruction absolutely precluded the jury from finding Martinez had acted in self-defense.
 
 See id.
 
 Absent an independent forcible felony in Martinez’s case, the Supreme Court concluded it was error to read this inapplicable instruction.
 
 See id.
 
 at 454.
 

 Before deciding what relief, if any, Martinez was entitled to, the court considered the case law dealing with jury instructions and fundamental error.
 
 See id.
 
 at 454-55. Inherent in a fair trial is the right to have the court “correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.”
 
 Gerds v. State,
 
 64 So.2d 915, 916 (Fla.1953);
 
 see Delva,
 
 575 So.2d at 644. Where the challenged jury instruction involves an affirmative defense, fundamental error arises only where the instruction is “so flawed as to deprive defendants claiming the defense ... of a fair trial.”
 
 Smith v. State,
 
 521 So.2d 106, 108 (Fla.1988). This is a rigorous standard, for fundamental error occurs only in those rare cases such as “where the interests of justice present a compelling demand for its application.”
 
 Ray v. State,
 
 408 So.2d 956, 960 (Fla.1981). The court in
 
 Martinez
 
 noted, “We have never held that the failure to give an instruction or to give an erroneous instruction on an affirmative defense always constitutes fundamental error.” 981 So.2d at 455.
 

 The
 
 Martinez
 
 court focused upon two aspects of the case. First, self-defense
 
 *386
 
 was not Martinez’s only defense strategy.
 
 See id.
 
 Although the defense asserted that his girlfriend may have attacked Martinez first, the strategy used alternatively allowed the jury to reject the self-defense claim, yet conclude that Martinez lacked a premeditated intent to kill her and, instead, acted in an intoxicated frenzy.
 
 See id.
 
 at 456. Significantly, even if giving the inapplicable instruction was error, it did not deny Martinez his sole, or even primary, defense.
 
 Id.
 
 Second, the Supreme Court reasoned that Martinez’s claim of self-defense was extremely weak.
 
 See id.
 
 at 456. The court determined that even if the trial court had not read the instruction to the jury, no reasonable possibility existed that the jury would have found Martinez not guilty of attempted murder.
 
 See id.
 
 That is, Martinez received a fair trial, and the facts did not present a compelling claim of fundamental error.
 
 Id.
 
 at 457;
 
 accord Clark v. State,
 
 28 So.3d 1213 (Fla. 4th DCA 2009);
 
 Barnes v. State,
 
 12 So.3d 797 (Fla. 5th DCA 2009) (on remand) (concluding that giving the “forcible felony” instruction, absent an independent forcible felony, was not fundamental error in a prosecution for attempted first-degree murder where defendant asserted self-defense, given evidence the victim was shot eight times, including once in the back as he fled a hail of bullets). Expressly refusing to set out a bright-line rule,
 
 Martinez
 
 left open the question of whether giving the inapplicable “forcible felony” instruction can ever rise to fundamental error.
 
 See
 
 981 So.2d at 455-57 & n. 5.
 

 Following
 
 Martinez,
 
 in
 
 Vowels v. State,
 
 the Fifth District Court grappled with this issue.
 
 See
 
 32 So.3d at 720. The State charged Vowels with aggravated battery with a deadly weapon based on a physical altercation involving Vowels and Donaldson, the purported victim.
 
 Id.
 
 The testimony of Vowels’ wife and Donaldson conflicted in several material respects.
 
 Id.
 
 at 720-21. The trial court read the “forcible felony” instruction without an objection, and the jury found Vowels guilty as charged.
 
 See id.
 
 Like Appellant, Vowels asserted fundamental error on appeal because he was not charged with an independent forcible felony.
 
 See id.
 
 at 721.
 

 Applying the
 
 Martinez
 
 analysis, the appellate court in
 
 Vowels
 
 noted self-defense was Vowels’ only defense.
 
 See
 
 32 So.3d at 721. No forensic evidence was admitted establishing the precise order of events.
 
 See id.
 
 The only testimony about the fight came from eyewitnesses who offered strikingly different accounts concerning critical details.
 
 See id.
 
 The district court reasoned that in giving the inapplicable instruction, the trial judge led the jury to believe no theory of self-defense was available because Vowels admitted having committed an aggravated battery with a deadly weapon.
 
 See id.
 
 Distinguishing its own decision in
 
 Barnes v. State,
 
 12 So.3d at 797, where the claim of self-defense was significantly weaker, the
 
 Vowels
 
 panel concluded that by effectively negating Vowels’ only defense theory, the instruction constituted fundamental error and compelled a reversal and remand for a new trial.
 
 See
 
 32 So.3d at 721.
 

 Complying with
 
 Martinez,
 
 we must consider the totality of the circumstances in determining whether the erroneous instruction resulted in fundamental error in Appellant’s trial.
 
 See
 
 981 So.2d at 455-57 & n. 5;
 
 Croom v. State,
 
 36 So.3d 707, 709 (Fla. 1st DCA 2010). The testimony and other evidence presented to Appellant’s jury is more akin to what the jury heard in
 
 Vowels
 
 than in
 
 Martinez.
 

 No eyewitnesses were present when Appellant and Young’s disagreement turned physical. The jury heard evidence suggesting Young and Appellant had reasons to be upset with each other and to be
 
 *387
 
 concerned about the uncertain status of their relationship. The jury heard no evidence to indicate Young called for help after Appellant first left the room; in fact, when he returned to the room, Young accompanied him along the breezeway leading to the parking lot. Some testimony indicated Young had unexpectedly delivered the first hits and sustained her injuries only as Appellant defended himself and/or as Young hit the wall or slipped and fell face-first to the ground. Appellant denied intentionally touching Young with the intent to cause her any bodily harm, and the verdict indicated the jury agreed with him on that point. He denied making threatening remarks or aiming the liquor bottle at Young.
 

 This was a classic “he said/she said” incident with no other eyewitnesses. Some testimony, if believed by the jury, would have shown Appellant was not the initial aggressor and resisted Young in self-defense. After the jury heard this sharply conflicting evidence, the trial court gave the inapplicable “forcible felony” instruction.
 
 See Martinez,
 
 981 So.2d at 454;
 
 In re Standard Jury Instructions,
 
 976 So.2d at 1087;
 
 Vowels,
 
 32 So.3d at 720;
 
 Giles,
 
 831 So.2d at 1265-66. The jury had to resolve these conflicts to determine whether Appellant acted in self-defense. Because the substance of this misleading instruction effectively gutted Appellant’s key defense and very likely confused the jury, the defense was significantly prejudiced.
 
 See Seavey v. State,
 
 57 So.3d 978, 980 (Fla. 5th DCA 2011) (“The failure to give a complete or accurate jury instruction constitutes fundamental error if the omission is pertinent or material to what the jury must consider in order to convict.”);
 
 McCoy v. State,
 
 56 So.3d 37 (Fla. 1st DCA 2010);
 
 Sloss v. State,
 
 45 So.3d 66 (Fla. 5th DCA 2010) (concluding that trial counsel’s failure to object to inclusion of inapplicable “forcible felony” instruction in prosecution for aggravated battery constituted ineffective assistance, where the instruction negated the theory of self-defense);
 
 Bouie v. State,
 
 27 So.3d 88 (Fla. 1st DCA 2009);
 
 Stoute v. State,
 
 987 So.2d 748, 749-50 (Fla. 4th DCA 2008).
 

 Compounding the confusion, the court misread another portion of the standard instruction, telling the jury that if it was convinced that Appellant
 
 was justified
 
 in using non-deadly force, then it should find him
 
 guilty.
 
 Juries are presumed to have followed the instructions given.
 
 See Sutton v. State,
 
 718 So.2d 215, 216 n. 1 (Fla. 1st DCA 1998). Thus, even if the jury believed Appellant justifiably used non-deadly force to protect himself, the court’s material misstatement told the jury to find Appellant guilty. The written instruction is correctly stated, but we cannot discern from this record whether the jury actually received written instructions before its deliberations.
 

 In finding Appellant guilty of the lesser-included offense of felony battery, the jury determined that although Appellant actually and intentionally touched or struck Young against her will, resulting in great bodily harm, permanent disability, or permanent disfigurement, he did not intentionally or knowingly cause the victim harm. Under the totality of the circumstances, the instructions at issue were so erroneous and confusing as to affect the verdict.
 
 See Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960). Because these errors denied Appellant a fair trial and thus constituted fundamental error, we are constrained to REVERSE the judgment and sentence and REMAND for a new trial.
 

 WOLF and LEWIS, JJ., concur.