# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Nos. 1D17-5161
1D17-5162

_____

AKEEN KADONI PAUL,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Marianne L. Aho, Judge.

July 22, 2019

LEWIS, J.

In these consolidated appeals, Appellant, Akeen Kadoni Paul, appeals his judgment and sentence for burglary of a dwelling and resisting an officer without violence and the order revoking his probation and the sentence resulting therefrom. Appellant raises four issues on appeal, none of which warrant reversal. We, therefore, affirm.

FACTUAL BACKGROUND

In 2013, Appellant pled guilty to five counts of armed robbery and one count of possession of less than twenty grams of cannabis. The offenses occurred when Appellant was eighteen years old.

Appellant was sentenced as a youthful offender to six years' imprisonment, "of which 4 [years were to] be served by imprisonment followed by 2 [years] probation."

In February 2017, a probation violation report was filed, alleging that Appellant committed the new law violations of burglary of a dwelling and resisting an officer without violence. While the State charged Appellant with these offenses in a separate case, the probation violation evidentiary hearing and the trial on the new law offenses occurred simultaneously. The State filed a notice of intent to classify Appellant as a prison releasee reoffender ("PRR") in the new law violation case, relying on Appellant's 2013 conviction and sentence for armed robbery.

Thereafter, Appellant filed a motion in limine in which he asked the trial court to prohibit the State from introducing any evidence "relating to or testimony regarding [him] having a gun and drugs on his person and any other reference to [him] regarding a gun and drugs." In opposition to the motion, the prosecutor asserted in part:

> Your Honor, one of the State's witnesses, in the police reports and in depositions, did state that one of the suspects – there are three in this case that were observed committing the burglary – made a statement to a witness at the time the burglary was being committed, stating that he needed to run and that he had a stick and he had five seconds to run.
> Now, the State is intending to elicit this testimony as a statement of a co-conspirator. . . .
> Also . . . in this particular case, the State is not necessarily introducing that statement for the truth of the matter asserted. We are not going – or at this point do not plan on asserting that anyone was actually armed, solely that this statement is evidence that this witness interrupted a burglary in process, that the persons that were there, by the statement, indicated they did not have permission to be there, that they had the intent to commit an offense, and that is relevant to proving the charge of burglary . . . .

2

Defense counsel argued in response that the statements were not relevant and were hearsay and that admission of the statements would violate the confrontation clause. The trial court denied Appellant's motion in part, finding "that this anticipated statement is a statement of a co-conspirator, which would not be subjected to the confrontation clause." It further stated, "So I do find that would not be hearsay, it's not being offered for the truth of the matter asserted or, in the alternative, it would be an exception to the hearsay rules of evidence."

During trial, the State first called the victim, who was notified while at work that his house was being burglarized. When he arrived home, he found that his back door was completely off the hinge, everything was in disarray, and several items were missing. After the police left his home, the victim and his fiancé saw a light down the road. Appellant was later arrested in the area where the light was coming from. The victim recognized Appellant as the man who was "on the footage in [his] video." The victim testified that a phone was found in his yard that did not belong to him.

The victim's cousin testified that, at the victim's request, he went to the victim's home before the victim arrived. The cousin saw a TV and phone in the victim's yard. He also saw a silhouette of someone and asked the person what he was doing. When asked what the male voice said, defense counsel objected and "renew[ed] [her] objection from yesterday regarding the motion in limine." When the trial court said, "Statement of a coconspirator," defense counsel asserted, "It is inadmissible hearsay." The trial court replied, "So the objection is overruled and the record is incorporated by reference." The cousin then testified, "I said, Hey, what are you doing? He said, oohh, nothing." When asked if he heard another voice, the cousin replied, "He said, You have got five seconds to get back because I've got a stick." When asked what he understood that to mean, the cousin replied, "When they say they've got a stick, it means you've got a pistol, a gun."

An officer later testified that upon arriving at the scene, he saw that the victim's back door had been kicked in. The house had been rummaged through and ransacked. The victim told the officer that he saw on his "video feed off his cell phone" several males enter his residence. The officer watched the video and saw

3

the men enter the home and remove "several of the victim's items as they fled." The officer later responded to an area about three houses down from the victim's home and saw the victim and his girlfriend "in the middle of the street as the suspect [Appellant] was . . . crawling out from the embankment next to the road." The victim was pointing at Appellant saying, "That's him, that's him." Appellant told the officer he was looking for his cell phone. Another officer testified that Appellant fled from officers before being arrested. The cell phone found at the scene contained Appellant's picture. During his police interview, Appellant was described as being upset and agitated, he claimed to have dropped his phone, and he denied his involvement in the burglary.

The trial court subsequently instructed the jury in part as follows:

> To prove the crime of burglary, the state must prove the following two elements beyond a reasonable doubt:
> 1. [Appellant] entered a structure owned by or in the possession of [the victim].
> 2. At the time of entering the structure, [appellant] had the intent to commit theft, an offense other than burglary or trespass in that structure.
>
> . . . .
>
> Proof of possession by an accused of property recently stolen by means of a burglary unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince you beyond a reasonable doubt that [Appellant] committed the burglary.

During jury deliberations, the trial court addressed Appellant's violation of probation case, taking judicial notice of "all testimony, exhibits, evidence, arguments and otherwise placed on the record" during trial. After the testimony of Appellant and his probation officer, the trial court found that the State had met its burden of proof by a preponderance of the evidence that Appellant violated his probation. The jury found Appellant guilty as charged

4

on the two new law offenses. The trial court denied Appellant's motion for new trial.

During the sentencing hearing, the prosecutor noted that she wanted to play for the court certain jail calls, explaining, "This was entered into the court record as a court exhibit at trial. It was never entered in as an exhibit for trial purposes for the jury." The prosecutor claimed that the calls contained conversations between Appellant and his mother and girlfriend during which he was seeking to influence any potential testimony by witnesses or influence them to provide him an alibi. Over defense objection, the trial court received the calls into evidence. During one call, Appellant stated to his mother, "All she got to do, man, is just tell them what I told y'all. I'm goin' to court tomorrow at 1 o'clock. All she has to do is just tell him, man. . . ." He later stated, "All you got to do is just tell them what I told you, dog. And make sure you keep that video when they whooped me too," and "All I need you to do, man, is tell them what I told you." After defense counsel argued that the calls were irrelevant and constituted hearsay, the trial court stated, "So overruled. I find that the statements to date are admissible, and I will be very careful to assign them the weight that I think they deserve. I am very aware of the testimony at trial, which I think is the primary information before the Court, because we're here for sentencing on the guilty verdicts . . . ."

Thereafter, defense counsel asked for a "guidelines of 18.025 years," while the State asked for a thirty-year sentence, including "that 15-year period for which he would not earn gain time." As to the new law offense of burglary, the trial court sentenced Appellant, who was twenty-two years of age at the time, to fifteen years' imprisonment as a PRR. Appellant was sentenced to 272 days in jail on the resisting offense. As for the violation of probation case, the trial court revoked probation and sentenced Appellant to thirty years' imprisonment, with the sentences to run concurrently.

While his appeal was pending, Appellant filed a Motion to Correct Sentencing Errors Under Rule 3.800(b)(2), Florida Rules of Criminal Procedure. Appellant argued in part that his sentences were illegal because they were unconstitutionally cruel and unusual, "lacking a basis in proportionality analysis."

5

Appellant asserted that brain research demonstrated that he was not an adult with respect to mental capacity. He cited to *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010), in support of his argument. The trial court rejected Appellant's argument, setting forth in part, "Defendant has failed to cite any case holding or otherwise suggesting that Defendant's sentences are unconstitutional. In fact, the cases cited by Defendant apply to juveniles; Defendant is an adult. Therefore, those cases are inapposite. Accordingly, this claim is denied." This appeal followed.

ANALYSIS

In his first issue, Appellant argues that the trial court failed to make the mandatory threshold findings before admitting into evidence the victim's cousin's testimony about any co-conspirator's hearsay statements and that the statements were not relevant and were prejudicial. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2016). "A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy" falls under a hearsay exception. § 90.803(18)(e), Fla. Stat. (2016). "In determining the existence of a conspiracy, a court must rely upon evidence independent of the hearsay statements to prove the conspiracy before the coconspirator's hearsay statements are admissible." *Foster v. State*, 679 So. 2d 747, 753 (Fla. 1996); *see also Tramontano v. State*, 778 So. 2d 449, 450 (Fla. 4th DCA 2001) (holding that the statements of the co-conspirator were properly admitted against the appellant because the State presented sufficient independent evidence of a conspiracy). While the admissibility of evidence is within the sound discretion of the trial court and is reviewed for an abuse of discretion on appeal, the question of whether a statement constitutes hearsay is a matter of law subject to de novo review. *Tundidor v. State*, 221 So. 3d 587, 598 (Fla. 2017). However, the abuse of discretion standard has been applied when reviewing whether a hearsay exception applies. *Beckman v. State*, 230 So. 3d 77, 89 (Fla. 3d DCA 2017).

6

As for the issue of preservation, which the State raises, the record establishes that while defense counsel argued below that the testimony at issue constituted hearsay and violated the confrontation clause, counsel did not argue that the trial court failed to make any threshold findings for the co-conspirator hearsay exception to apply. In order for an argument to be cognizable on appeal, it must be the specific contention asserted below as the legal ground for the objection, exception, or motion. *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005). Because Appellant did not make any argument about threshold conspiracy findings below, the argument was not preserved for appeal.

With that said, even if the argument had been preserved, affirmance as to this issue would still be warranted. The trial court initially determined that the challenged testimony was not hearsay. To the extent that Appellant disputes that determination on appeal, he has failed to show any error on the trial court's part. As the State contends, it did not attempt to use the cousin's testimony as to what he heard one of the men in the victim's yard say to prove the truth of the matter asserted, i.e., that any of the men there had a weapon. Instead, as the prosecutor argued, the State used the statement in order to prove that the men, including Appellant, were knowingly committing a crime.

As to Appellant's argument that there was no evidence of a conspiracy, the State is correct that it introduced independent evidence of such in the form of the video evidence showing three men entering the victim's home. There was also evidence of items being found outside the victim's home. Appellant's arguments that the evidence was irrelevant and prejudicial are also meritless.

We further determine that even if it could be said that the trial court erred, any error would be harmless. *See Chavez v. State*, 25 So. 3d 49, 54 (Fla. 1st DCA 2009) (noting that an error in admitting hearsay is subject to a harmless error analysis, which looks at whether there is a reasonable possibility that the error affected the verdict). Appellant was not charged with possession of a firearm, and the cousin never identified Appellant as the man who made the statements at issue. Thus, there is no reasonable possibility that any error would have affected the verdict.

In his second issue, Appellant argues that the portion of the burglary instruction explaining in part that proof of possession by an accused of property recently stolen may justify a conviction was fundamentally erroneous because it deprived him of a fair trial. Jury instructions are subject to the contemporaneous, specific objection rule. *Smith v. State*, 76 So. 3d 379, 383 (Fla. 1st DCA 2011). If no objection is made, a defendant must demonstrate that any error was fundamental. *Id.* A fundamental error analysis in the context of jury instructions considers the effect of the erroneous instruction in light of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel. *Id.*

According to Appellant, the instruction at issue allowed the jury to consider "the inference of guilt of burglary from property recently stolen, which was confusing and misleading because there was no evidence to support it." The State argues that no fundamental error occurred because the jury did not need to consider possession of stolen property to convict, and it was not an issue during the trial. This argument is correct. As the State also contends, if anything, inclusion of this instruction benefitted Appellant given the fact that he did not possess any stolen property when he was arrested. Appellant has failed to establish any fundamental error as to the jury instruction at issue.

In his third issue, Appellant argues that his sentences violate due process and constitute fundamental error because the trial court erroneously took into consideration some of his jail calls where there was no evidence that he was ever arrested, charged, or convicted of any crimes involving the witnesses or calls. For an error related to a sentence to be considered on appeal, it must fall into one of three categories: (1) a sentencing error preserved through a contemporaneous objection or timely motion under Florida Rule of Criminal Procedure 3.800(b); (2) an error that occurred during the sentencing process that is preserved by contemporaneous objection; or (3) fundamental error that occurred during the sentencing process. *Pressley v. State*, 73 So. 3d 834, 836 (Fla. 1st DCA 2011). An exception to the general rule that a sentence imposed within the statutory limits is unassailable on appeal is where the sentence is based on constitutionally impermissible factors, such as unsubstantiated allegations of

wrongdoing. *Williams v. State*, 193 So. 3d 1017, 1018 (Fla. 1st DCA 2016). This is because a sentence that is based on a mere allegation or surmise violates a defendant's constitutional rights. *Id.*

In *Williams*, the prosecutor asserted that the appellant had several prior cases where the charges were dropped because the State could not get witnesses to testify, implying that the appellant had threatened the witnesses not to testify. *Id.* In reversing and remanding for resentencing, we noted that there was no record evidence of witness threats or any evidence that the appellant was charged with threatening witnesses in the prior cases and that it was clear that the trial court based its sentencing decision on the prosecutor's assertions of witness tampering. *Id.* at 1019. We set forth, "Although it was not necessarily improper for the trial court to consider Appellant's prior arrests not resulting in convictions at sentencing, it was improper for the court to base Appellant's sentence in whole or in part on uncharged and wholly unsubstantiated allegations of wrongdoing. *Id.*; *see also Craun v. State*, 124 So. 3d 1027, 1030 (Fla. 2d DCA 2013) (noting that nothing presented either in the sentencing memorandum or at the sentencing hearing connected the appellant to any alleged continuing fraud and reversing and remanding for a new sentencing hearing); *Macintosh v. State*, 182 So. 3d 888, 889 (Fla. 5th DCA 2016) ("[T]he trial court's comments indicate that the sentence was influenced by its belief that [the appellant] had committed uncharged acts of violence . . . . Although this may be a proper sentencing consideration, here, the allegations of violence were unsubstantiated hearsay from the assistant state attorney . . . .").

As the State argues on appeal, Appellant's argument is meritless. This was not a situation like that in *Williams*, *Craun*, or *Macintosh* where the trial courts relied upon unsubstantiated allegations of wrongdoing. Here, instead, the trial court heard the jail calls and was able to determine if what it heard supported the State's contention that Appellant attempted to influence his mother and girlfriend. Indeed, the trial court stated, "I will be very careful to assign them the weight that I think they deserve. I am very aware of the testimony at trial, which I think is the primary information before the Court, because we're here for sentencing on

9

the guilty verdicts . . . ." Given such, Appellant has failed to show any fundamental error as to this issue.

In his fourth and final issue, Appellant contends that his fifteen-year PRR sentence for burglary and his thirty-year sentence for violating probation violate the constitutional prohibition on excessive punishments given his age at the time of sentencing. According to Appellant, brain science research shows that he, as a twenty-two-year-old, was not an adult with respect to mental capacity.

"'[M]ixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue.'" *Andrews v. State*, 82 So. 3d 979, 984 (Fla. 1st DCA 2011) (quoting *Hilton v. State*, 961 So. 2d 284, 293 (Fla. 2007)). "However, when considering Eighth Amendment issues, appellate courts must yield 'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)). "Florida courts have been reluctant to declare a prison sentence unconstitutional because of its length," and "[t]he Florida Supreme Court has held that in order for a prison sentence to constitute cruel and unusual punishment solely because of its length, the sentence must be *grossly* disproportionate to the crime." *Id.*

In *Roper v. Simmons*, 543 U.S. 551, 555 (2005), the Supreme Court held that the Eighth and Fourteenth Amendments prohibit the imposition of the death penalty on juvenile offenders and explained that courts must look to the evolving standards of decency to determine whether a punishment is cruel and unusual. While recognizing that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," the Court nevertheless concluded that the line must be drawn at the age of 18 because that is "the point where society draws the line for many purposes between childhood and adulthood." *Id.* at 574.

Subsequently, in *Graham v. Florida*, 560 U.S. 48, 74 (2010), the Supreme Court held that the imposition of a life without parole

10

sentence on a juvenile offender who did not commit a homicide constitutes cruel and unusual punishment. The Court reasoned that juvenile nonhomicide offenders' limited culpability, the severity of the sentence of life without parole, and the lack of penological justification for the punishment for such offenders led the Court to conclude that the sentencing practice was cruel and unusual. *Id.* at 74. After examining the characteristics of juveniles, the Court again drew the "clear line" at the age of eighteen for the purposes of its holding because that is the point where society draws the line for many purposes between childhood and adulthood. *Id.* at 74-75.

Two years later, in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that mandatory life without parole sentences for juvenile offenders violate the Eighth Amendment's prohibition on cruel and unusual punishment because they prevent consideration of juveniles' lessened culpability and greater capacity for change. The Court focused on the fact that "*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing" and on the reasons for why "juveniles have diminished culpability and greater prospects for reform." *Id.* at 471. The Court again defined juvenile offenders as those who are under the age of eighteen at the time of their crimes and it interchangeably used the terms juveniles and children. *Id.* at 465.

Appellant cites various opinions from non-Florida courts that, according to him, have extended *Roper*, *Graham*, and *Miller* to offenders who are eighteen years of age or older. *See, e.g.*, *Cruz v. United States*, 11-CV-787 (JCH), 2018 WL 1541898, at *25 (D. Conn. Mar. 29, 2018) (holding that *Miller* applies to eighteen-year-olds and that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for offenders that were eighteen years old at the time of their crimes). However, we have rejected the argument that a sentence of life without parole for a non-juvenile offender convicted of murder is unconstitutional pursuant to *Graham*. In *Romero v. State*, 105 So. 3d 550, 551 (Fla. 1st DCA 2012), the appellant, who was eighteen years old at the time of his crime, asked this Court to extend *Graham* to him based on his youth and the attendant factors. *Id.* at 551-53. We held that "*Graham* is not controlling for an adult

11

defendant" and emphasized that "the Supreme Court itself limited the scope of *Graham*." *Id.* at 553. We footnoted *Miller* and found that the appellant's reliance upon it and *Daugherty v. State*, 96 So. 3d 1076 (Fla. 4th DCA 2012), was misplaced and noted that the appellant was not a juvenile and that his sentence was not statutorily mandated. *Id.* at 554; *see also Wilson v. State*, 249 So. 3d 800, 800 (Fla. 1st DCA 2018) (per curiam affirming the appellant's sentence and citing *Romero* for the proposition that *Graham* does not apply to offenders eighteen years of age or older); *McCray v. State*, 247 So. 3d 721, 722 (Fla. 1st DCA 2018) (per curiam affirming the appellant's sentence and citing *Romero* for the proposition that *Graham* does not apply to an eighteen-year-old defendant, "notwithstanding the juvenile nature of the defendant's mental and emotional development"). More recently, in *Lockhart v. State*, 260 So. 3d 1184, 1185 (Fla. 1st DCA 2018), we rejected the appellant's argument that "the rationales of the *Graham* line of cases and the neurological research showing that the brain continues to develop until the mid-twenties" should lead us to require that sentencing courts focus on offenders' actual mental age on a case-by-case basis. We affirmed on the authority of *Romero*, *McCray*, and *Wilson*. *Id.*

As the foregoing cases make clear, Appellant's argument that the sentencing court should have considered his mental age rather than his chronological age is unavailing. Not only are the cases relied upon by Appellant distinguishable given that he was not sentenced to life imprisonment, but nothing in the *Graham* line of cases requires the analysis proposed by Appellant, either in cases of life imprisonment or otherwise.

For the reasons set forth herein, we reject Appellant's arguments and affirm.

AFFIRMED.

MAKAR and M.K. THOMAS, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

Andy Thomas, Public Defender, and Joanna A. Mauer, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee, for Appellee.