516 So.2d 1052 (1987)
Hipolito MARRERO, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-2325.
District Court of Appeal of Florida, Third District.
December 15, 1987.
*1053 Edward F. McHale, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Hipolito Marrero appeals his conviction and sentence for unlawful possession of a firearm by a convicted felon in violation of Section 790.23, Florida Statutes (1985), contending that, first, the evidence was insufficient to sustain a conviction and, second, the trial court's instruction to the jury on Marrero's necessity defense was erroneous.
The evidence before the jury was as follows. On the date of the offense, Marrero, returning to his van in a parking lot of a Miami Beach hotel, was confronted by a man who stuck a pistol against Marrero and demanded his money. Marrero grabbed the gun from him and pushed it downward. During the ensuing struggle, the gun went off, a bullet or bullets striking the assailant and disabling him.
Marrero continued to hold the gun. He testified that he was filled with terror; he thought he might have killed his assailant and remembered a prior occasion when he had been robbed and shot.
Apparently moments later, Marrero was observed acting "strange" by a uniformed off-duty police officer who knew nothing of the struggle and shooting. The officer testified that he was about to start following Marrero when a young woman came up to him and told him that Marrero had just put a gun in his pocket. Hearing that, the officer drew his revolver. Marrero testified that he, Marrero, had not put the gun in his pocket, but was holding it in his hand, and when he saw the officer draw his revolver, Marrero held his gun up high. According to the officer, Marrero pulled the gun from his pocket when he saw the officer, started to run away, and threw the gun toward an adjacent hotel. Marrero, in contrast, testified that he ran toward the officer and dropped his gun to the ground.
Finally, the officer testified that Marrero said to him in Spanish, "I have just shot a man who ... robbed me" and added, "Please don't say anything about the gun. I'm cooperating with you. Don't say anything about the gun... . You're Cuban just like me. Please don't say anything about the gun." Marrero denied making these statements.
Viewing the evidence most favorably to the State, as we must, we conclude that because a reasonable-minded jury could find therefrom that Marrero had time to reflect on the consequences of his continued possession of the firearm and nonetheless possessed it after the necessity which justified his initial possession had passed  as will be seen, requisites for conviction  the jury's verdict is supported by sufficient evidence. Although Marrero's throwing away of the gun  circumstantial evidence of his state of mind  is arguably consistent with the hypothesis of innocence that Marrero was fearful about being charged with the shooting of his assailant, rather than with being charged with the crime of possession of a weapon by a convicted felon, a jury could readily infer from Marrero's beseeching of the officer not to say anything about the gun that Marrero was concerned about his continued possession of the weapon even before he disposed of it upon seeing the police officer. Thus, *1054 we must reject Marrero's argument that he was, and is, entitled to the entry of a judgment of acquittal.
We are, however, of the view that Marrero is entitled to a new trial because of the trial court's failure to properly instruct the jury on Marrero's defense. The jury was instructed that "[a] convicted felon may temporarily take a firearm from an armed attacker if necessary to prevent death or great bodily injury. He may not, however, retain possession of the firearm after the necessity which justified his taking of the firearm has passed." Marrero contends that this was an incomplete statement of the law in that it permitted the jury to find him guilty for his failure to immediately dispossess himself of the firearm after disabling his attacker, notwithstanding that a properly instructed jury could have found from the evidence that Marrero did not have time to reflect on the consequences of his possession of the firearm during the brief period of time when he possessed the firearm after his attacker was disabled. He argues that because the lawfulness of his initial possession of the firearm in defense of himself was never a disputed issue, and because the entire focus of the case was the lawfulness of his possession after he disabled his attacker, the incomplete instruction eviscerated his defense. We agree with Marrero, and reverse.[1]
Although Section 790.23, Florida Statutes (1985), makes it unlawful for "any person who has been convicted of a felony ... to have in his care, custody, possession, or control any firearm," the law has long recognized that there may be circumstances under which a convicted felon's possession of a firearm would be justified and his conduct declared not criminal.[2],[3] While *1055 Florida courts have not offered an explicit definition of this justification defense, a recent and workable definition is found in State v. Crawford, 308 Md. 683, 699, 521 A.2d 1193, 1200-01 (1987):
"(1) the defendant must be in present, imminent, and impending peril of death or serious bodily injury, or reasonably believe himself or others to be in such danger; (2) the defendant must not have intentionally or recklessly placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) the defendant must not have any reasonable, legal alternative to possessing the handgun; (4) the handgun must be made available to the defendant without preconceived design, and (5) the defendant must give up possession of the handgun as soon as necessity or apparent necessity ends."
The first four elements are clearly satisfied in the present case; it is the fifth  that the weapon be given up as soon as the necessity or the apparent necessity ends  that is our concern on this appeal.
We begin our discussion with Mungin v. State, 458 So.2d 293 (Fla. 1st DCA 1984). During a fight between the defendant Mungin and a prisoner named Williams, Williams dropped his knife, Mungin retrieved it, and in the fight stabbed Williams three times. Correctional officers arrived, subdued Williams, and told Mungin to surrender the knife. Mungin refused until Williams' inmate friends, who had thrown chairs at Mungin during the fight, were removed from the room. The First District receded from earlier cases that had held that self-defense can never be a defense to unlawful possession of a weapon,[4] and found instead that the statute did not divest an inmate of his right to defend himself against "the peril of death or serious bodily injury, even to the extent of removing the offending weapon from the hands of the would-be aggressor." Mungin v. State, 458 So.2d at 295. It thus held that the trial court erred in refusing to admit evidence of Williams' prior attack on Mungin and the circumstances of the fight between the two inmates, and reversed Mungin's conviction for violating the statute prohibiting prisoners from possessing weapons. Significantly, the court added that the result would be different if the defendant had had "sufficient time to reflect on the consequences of [his] possession... ." Id. (emphasis added).[5]
In Ambrister v. State, 462 So.2d 43 (Fla. 1st DCA 1984), the First District once again made clear that a defendant who does not give up possession of a firearm as soon as necessity or apparent necessity has ended may be convicted of a possession charge only if it is found that the defendant had sufficient time to reflect on the consequences of his possession. At trial, Ambrister, charged with carrying a concealed firearm, unsuccessfully requested a jury instruction on the defense of necessity. *1056 On the appeal of his conviction, the First District reversed, finding that Ambrister, having maintained that he "did not have time to reflect on the consequences of concealing the firearm," was entitled to a new trial with the jury to be instructed on the defense of necessity. Ambrister v. State, 462 So.2d at 45.
It is apparent from Mungin that although the necessity justifying the initial possession of the weapon had passed, a defendant is nonetheless entitled to have the jury consider whether his actions after that moment evinced a knowing possession of the weapon in violation of the law. Other courts have likewise found the defense to exist, despite evidence that the necessity may have passed, and have reversed convictions obtained where the jury had not been instructed on the defense. See People v. Mizchele, 142 Cal. App.3d 686, 191 Cal. Rptr. 245 (1983) (defendant took gun away from his wife, whom he feared, and after the gun went off, put it in the closet); People v. Furey, 13 A.D.2d 412, 217 N.Y.S.2d 189 (N.Y. App. Div. 1961) (defendant found a gun on the street, picked it up, and carried it about a block when he saw a police officer and either "dropped" the gun or "threw it" over his shoulder); People v. LaPella, 272 N.Y. 81, 4 N.E.2d 943 (1936) (defendant found the weapon in a public bathroom, kept an appointment, and then, twenty minutes after first finding the weapon, brought it to the police); People v. Coffey, 153 Mich. App. 311, 395 N.W.2d 250 (1986) (defendant may have wrestled gun away from victim, put it in his pocket for safekeeping, and walked towards arresting officer, indicating possible intent to relinquish the weapon). Similarly, in State v. Hardy, 60 Ohio App.2d 325, 397 N.E.2d 773 (1978), where the defendant used a gun in self-defense, took the victim to the hospital, and only then called the police, the conviction in a bench trial was reversed and remanded for a factual determination of the self-defense issue. Compare United States v. Stover, 822 F.2d 48 (8th Cir.1987); United States v. Parker, 566 F.2d 1304 (5th Cir.1978); Logan v. United States, 402 A.2d 822 (D.C. 1979); State v. Clement, 368 So.2d 1037 (La. 1979). While Mungin does not expressly announce that the defendant's cognitive appreciation of the consequences of his possession is to be part of the required necessity instruction, we have no difficulty in concluding that the jury must be instructed that where the defendant retains the weapon after the necessity ends, he may not be convicted unless the jury finds that he continued to possess the weapon after he had sufficient time to reflect on the consequences of his possession.[6]
Since the defendant's request for such an instruction was refused, his conviction and sentence are reversed and the cause remanded for a new trial.
HUBBART, J., concurs.
SCHWARTZ, Chief Judge (dissenting in part).
I entirely agree with Judge Pearson's remarkable analysis of the applicable principles of law. Applying them to the facts of this case, however, I conclude that Marrero is entitled to a directed verdict of acquittal. The only scrap of evidence which is even suggestive of the possibility that the defendant did not retain the weapon for the brief period involved out of a non-cognitive  and non-felonious  reaction to the horrendous events which preceded it is his entreaty to the officer to forget about seeing the gun. I believe that it is just as likely that the source of this comment *1057 was an unjustified fear by Marrero, who had not read the cases cited by Judge Pearson at the time, that his possession of the firearm would be held against him as a convicted felon notwithstanding that under those very authorities he would be not guilty of an offense. Since, following the principle that a conflict between equal inferences which arises from such circumstantial evidence must be resolved in favor of the defendant, Sindrich v. State, 322 So.2d 589 (Fla. 1st DCA 1975); C. Torcia, 1 Wharton's Criminal Evidence § 31 (14th ed. 1985), we must therefore assume that Marrero's statement to the officer did not reflect guilt, there is nothing left to support a conviction. I would therefore order the appellant discharged.
NOTES
[1] We also agree that the error of the instruction was exacerbated by the prosecutor's closing argument:

"[T]he judge is going to read you an instruction and that instruction is going to say a convicted felon may temporarily take a firearm from an armed attacker if necessary to prevent death or great bodily injury. He may not, however, retain possession of the firearm after the necessity which justified his taking of the firearm has passed.
... .
"And I submit to you that if you believe that it was necessary for the Defendant to possess a firearm long enough to protect himself when that was over and ended, after the shooting occurred and that Hipolito Marrero committed the crime of possession of a firearm by a convicted felon when he ran away."
[2] More than one hundred years ago, the United States Supreme Court spoke of like circumstances in which facially criminal conduct would be declared not criminal:

"The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, `that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire  `for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder." United States v. Kirby, 74 U.S. (7 Wall.) 482, 487, 19 L.Ed. 278, 280 (1868).
[3] Although most courts agree that certain possessions are justified, see Annot., 39 A.L.R.4th 967 (1985), there is little agreement on the name the defense is to be called. See Mungin v. State, 458 So.2d 293 (Fla. 1st DCA 1984) (defense variously referred to as self-defense, necessity, and duress); Ambrister v. State, 462 So.2d 43 (Fla. 1st DCA 1984) (necessity); United States v. Harper, 802 F.2d 115, 117 n. 1 (5th Cir.1986) (rejecting self-defense, duress, and necessity; "justification" is better term); United States v. Nolan, 700 F.2d 479, 484 n. 1 (9th Cir.1983) (differences between duress, self-defense, and necessity "are not important in this case"); United States v. Gant, 691 F.2d 1159, 1161 n. 3 (5th Cir.1982) (rejecting duress and necessity; "justification" is better term); United States v. Panter, 688 F.2d 268, 272 n. 7 (5th Cir.1982) (facts fit under both self-defense and necessity); State v. Crawford, 308 Md. 683, 521 A.2d 1193, 1197 n. 1 (1987) (necessity). See generally 1 W. LaFave & A. Scott, Substantive Criminal Law §§ 5.3, 5.4, 5.7 (1986); P. Robinson, Criminal Law Defenses (1984); H. Packer, The Limits of the Criminal Sanction ch. 6 (1968). As we see it, the problem with using "duress" or "self-defense" to describe the defense to the charge of possession of a firearm by a convicted felon is that the defendant may very well be excused from his assault upon his assailant by reason of duress or self-defense without being excused from his possession of the firearm, because he either had other alternatives to the possession of the firearm or possessed it beforehand. The word "necessity" more accurately describes the defense to the possession charge, but it may carry some baggage associated with the duress defense. We prefer and will use the still more general term "justification."
[4] Dardy v. State, 324 So.2d 178 (Fla. 1st DCA 1975); Carter v. State, 312 So.2d 494 (Fla. 1st DCA 1975). Before Mungin, the Fourth District, in Nickerson v. State, 417 So.2d 762 (Fla. 4th DCA 1982), and Coleman v. State, 345 So.2d 1093 (Fla. 4th DCA 1977), held that self-defense is not a viable defense to the possession of a firearm by a convicted felon. Coleman was cited in a per curiam affirmance by this court in Ricks v. State, 439 So.2d 311 (Fla. 3d DCA 1983). However, as the briefs in Ricks reveal, the facts of that case are clearly distinguishable from those in the present case. Ricks carried his gun with him to work and kept the gun in his apron. Since he possessed the handgun with preconceived design, Ricks' conviction was properly affirmed as there was no evidentiary basis for a necessity instruction.

In approving the justification defense, we agree with the First District, disagree with the Fourth, and thus certify conflict.
[5] On rehearing en banc, a majority of the court expressly agreed that the statute in question did not "bar the temporary possession of a weapon taken from the possession of a would-be aggressor when it is used to defend the attacked inmate against the imminent peril of death or serious bodily injury." Mungin v. State, 458 So.2d at 297.
[6] The dissent says that the source of Marrero's alleged entreaty to the officer may have been his unjustified fear that his possession was incriminating. Marrero's fear could be unjustified only if he had dispossessed himself of the weapon as soon as the necessity for his possession ended. In such a case, Marrero would be entitled to acquittal not because he had no cognitive appreciation of the consequences of his possession, but because he did not retain the weapon beyond the necessity. However, since Marrero retained the weapon beyond the necessity, his fear that his possession was incriminating  expressed in his entreaty  was not unjustified because the law required him to shed the weapon. In such a case, he is not entitled to acquittal, and the jury may decide that he continued to possess the weapon after he had sufficient time to reflect on the consequence.