MARSTILLER, J.
Angelo Hardison appeals his conviction and sentence for second-degree murder, arguing the trial court committed fundamental error in instructing the jury on justifiable use of deadly force. He asserts the standard instruction given on justifiable use of deadly force was fundamentally erroneous. Specifically, he argues the instruction is inconsistent with current law because it effectively makes the defense available only to persons not engaged in unlawful activity. We find, however, the modification the trial court made to the instruction at Hardison’s request nullifies *1131 his claim of fundamental error. Accordingly, we affirm his conviction and sentence.
On the day of the fatal shooting for which Hardison was convicted, Hardison and three other people, including Calen Girtman, drove to the home of Girtman’s stepmother so Girtman could drop off his laundry. Girtman’s sister, Latoya Stevens, and her one-year-old daughter lived there, as well. While Girtman went inside the house, Hardison and the others waited outside in the car.
As they waited, Johnny Banks, the father of Stevens’ daughter, drove up. Har-dison and Banks were on unfriendly terms stemming from a marijuana purchase for which Banks claimed Hardison still owed him one hundred dollars. Banks was a large man — physically larger than Hardi-son — and, according to Hardison, had threatened to kill him over the unpaid money. Said threat, and other threatening messages, were conveyed by Girtman, who, for one or two weeks prior to the shooting, tried to mediate the disagreement between Hardison and Banks. Also according to Hardison, Banks regularly carried a gun, and had a reputation such that, “if it got down to it, he would probably hurt you.”
Hardison recognized Banks’s vehicle as it approached the house. In anticipation of his arrival, Hardison armed himself with a gun provided by one of his companions, then got out of the car and waited for Banks to pull up. Banks arrived, exited his vehicle, and approached Hardison, whereupon the men argued briefly. Har-dison saw Banks reach for his waistband, pointed his gun at Banks, and told Banks to show his hands. Banks neither complied nor pulled a gun of his own. Instead, he tried to slap the gun out of Hardison’s hand. The gun went off, and the men began wrestling for it. Either during the fight, or upon managing to break free, Hardison fired his gun at Banks several times. After the shooting, it was discovered Banks was unarmed.
At Hardison’s trial, the court instructed the jury on the justifiable use of deadly force. In pertinent part, based on Standard Jury Instruction (Criminal) 3.6(f), the court stated:
An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Angelo Hardison is charged if the death of Johnny Banks resulted from the justifiable use of deadly force. Deadly force means force likely to cause death or great bodily harm. A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself; or, two, the imminent commission of felony battery against himself.
[[Image here]]
In deciding whether defendant was justified in the use — use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual. However, to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoid[ed] only through the use of that force.... If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.
*1132 Possession of a firearm by a convicted felon is an unlawful activity.
The trial court then read the following provisions to the jury, as requested by Hardison’s counsel:
However, in certain circumstances, a convicted felon may lawfully possess a firearm. Those circumstances are, one, the felon must be in present, imminent and impending peril of death or serious bodily injury, or reasonably believed himself or others to be in such danger; two, the felon must not have intentionally or recklessly placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct. Three, the felon must not have any reasonable, legal alternative to possession the firearm. Four, the firearm must be made available to the felon without preconceived design. And, five, the felon must give up possession of the firearm as soon as necessity or apparent necessity ends.

Discussion

Where, as in this case, the challenged jury instruction involves an affirmative defense, fundamental error only occurs if the instruction is so flawed as to deprive the defendant of a fair trial. Martinez v. State, 981 So.2d 449, 455 (Fla. 2008). “In determining whether the jury instructions constituted fundamental error, we must consider ‘the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel.’” Floyd v. State, -So.3d-,-, 2014 WL 30573, 39 Fla. L. Weekly D76, D77 (Fla. 1st DCA Jan. 3, 2014) (quoting Smith v. State, 76 So.3d 379, 383 (Fla. 1st DCA 2011)).
Two statutory provisions are relevant here. Section 776.012, Florida Statutes, entitled “Use of force in defense of person,” provides:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
§ 776.012, Fla. Stat. (2009).
Section 776.013, Florida Statutes, generally governs use of deadly force in defense of oneself or another in a dwelling, residence or occupied vehicle. Subsection (3), however, states that:
A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonable believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
§ 776.013(3), Fla. Stat. (2009).
Hardison contends that Standard Jury Instruction 3.6(f), as currently worded, misstates the law because, in explaining the circumstances under which a defendant has the right to use deadly force in self-defense without the duty to retreat, the instruction effectively limits the right to persons “not engaged in unlawful activity.” He argues that, although section 776.013(3) includes such a restriction, section 776.012 does not; rather, under sub *1133 section (1), any person, who reasonably believes deadly force is necessary to prevent imminent death or great bodily harm, or an imminent forcible felony, may use such force without retreat, and without regard to whether the person is engaged in unlawful activity. Because the standard instruction failed to state there is no duty to retreat in the face of imminent death or great bodily harm, Hardison argues he was unfairly deprived of his only defense: the justifiable use of deadly force in self-defense when faced with what he believed to be an imminent and deadly threat. Hence, fundamental error occurred, requiring reversal of his conviction.
We have found two decisions from sister courts that, although they do not consider the justifiable use of deadly force jury instruction, discuss the scope of the defense under sections 776.012(1) and 776.012(3), and, in some measure, tend to support Hardison’s argument. First, the Second District, in Little v. State, 111 So.3d 214 (Fla. 2d DCA 2013), considered whether a person may claim justifiable use of deadly force under section 776.012(1), and therefore, immunity from criminal prosecution under section 776.032(1),[1] even though he or she was engaged in unlawful activity at the time. Although not central to its holding in the case, the court, answering the State’s “Tipsy Coachman” argument,[2],[3] determined:
Section 776.013(3) applies when a person is (1) not engaged in an unlawful activity and (2) attacked in any place outside the “castle” as long as (3) he or she has a right to be there. A person who does not meet these three requirements would look to section 776.012(1) to determine whether the use of deadly force was justified....
The requirements under sections 776.012(1) and 776.013(3) are not identical. A person proceeding under section 776.013(3) would have to prove that he or she reasonably believed the use of deadly force was “necessary ... to prevent death or great bodily harm ... or to prevent the commission of a forcible felony.” Under section 776.012(1), a person would have to prove that he or she reasonably believed the use of deadly force was “necessary to prevent imminent death or great bodily harm ... or to prevent the imminent commission of a forcible felony.”
Little, 111 So.3d at 221 (emphasis in original). The court went on to certify the question to the Florida Supreme Court as *1134 one of great public importance. Id. at 222-23.
Next, in State v. Wonder, 128 So.3d 867 (Fla. 4th DCA 2013), which also dealt with stand-your-ground immunity from prosecution, the State challenged the trial court’s decision to grant the appellant’s motion to dismiss under section 776.012(1), arguing that the court erroneously concluded the appellant was not engaged in unlawful activity. Concurring with the analysis in Little, the Fourth District concluded the matter of unlawful activity was irrelevant in any event, because the appellant sought immunity only under section 776.012(1), not section 776.013, and “[t]he exception for a defendant’s engagement in ‘unlawful activity’ does not exist under section 776.012.” Wonder, 128 So.3d at 869.
These decisions suggest that Standard Jury Instruction 3.6(f) could stand revision to clarify the circumstances under which the use of deadly force is justified. However, we make no such assertion today, and we decidedly do not hold that the standard instruction is fundamentally flawed. We do hold, however, that even if Hardison is correct that the portion of the standard instruction corresponding to section 776.012(1) erroneously omits the “no duty to retreat” statutory language, such omission did not result in fundamental error in his case.
Hardison testified at trial, admitting to being a convicted felon. Thus, his being in possession of a firearm was relevant. Hardison asserts that his defense hinged on his reasonable belief he was under threat of imminent death or great bodily harm. The trial court instructed the jury, based on the standard instruction, that:
An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Angelo Hardison is charged if the death of Johnny Banks resulted from the justifiable use of deadly force. Deadly force means force likely to cause death or great bodily harm. A •person is justified in using deadly force if he reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself, or, two, the imminent commission of felony battery against himself.
(Emphasis added.) Further, at the request of defense counsel, the court included the following modification, based on Marrero v. State, 516 So.2d 1052 (Fla. 3d DCA 1987),[4] to the portion of the standard instruction discussing unlawful activity:
However, in certain circumstances, a convicted felon may lawfully possess a firearm. Those circumstances are, one, the felon must be in present, imminent and impending peril of death or serious bodily injury, or reasonably believed himself or others to be in such danger; two, the felon must not have intentionally or recklessly placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct. Three, the felon must not have any reasonable, legal alternative to possession the firearm. Four, the firearm must be made available to the felon without preconceived design. And, five, the felon must give up possession of the firearm as soon as necessity or apparent necessity ends.
(Emphasis added.) Had the instruction not included the language based on Marre- *1135 to, thereby potentially leading the jury to judge Hardison’s defense solely on his unlawful possession of a firearm, we might be inclined to find merit in his claim of fundamental error. But when we consider the complete instruction on justifiable use of deadly force given in this case, we find the jury was sufficiently instructed that, absent a reasonable belief he was under threat of imminent death or great bodily harm, or imminent commission of a forcible felony, Hardison’s use of deadly force in self-defense was not justified. The evidence put before the jury could support a finding that, Hardison’s belief that the threat was imminent was unreasonable, whether or not he was engaged in unlawful activity. For these reasons, we conclude no fundamental error occurred, and, we AFFIRM Hardison’s conviction and sentence.
ROBERTS and WETHERELL, JJ„ concur.

.776.032 Immunity from criminal prosecution and civil action for justifiable use of force.—
(1) A person who uses force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer ... who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, the term "criminal prosecution” includes arresting, detaining in custody, and charging or prosecuting the defendant.
[[Image here]]
§ 776.032(1), Fla. Stat. (2010).

. The Second District found the trial erred in ruling that the appellant was not entitled to stand-your-ground immunity under circumstances permitted in section 776.012(1) because appellant had re-engaged his assailant after retreating to safety. Little, 111 So.3d at 216-18. The State urged affirmance, arguing that the appellant was not entitled to protection under section 776.012(1) because he was engaged in unlawful activity — felon in possession of a firearm — at the time. Id. at 218-19.

. See generally Powell v. State, 120 So.3d 577, 590 (Fla. 1st DCA 2013) (explaining tipsy coachman doctrine).

. Marrero sets forth the elements of the "necessity" or "justification" defense against a charge of possession of a firearm by a convicted felon. Marrero, 516 So.2d at 1055; see also Wade v. State, 610 So.2d 664, 666-67 (Fla. 1st DCA 1992) (holding trial court erred by failing to give jury instruction on necessity defense in prosecution for attempted second-degree murder, aggravated battery with firearm, and possession of firearm by convicted felon, even though court gave instruction on justifiable use of deadly force).