RAY, J.
Antonio Garrett appeals his conviction and sentence for first-degree murder and possession of a firearm by a convicted felon. His sole defense at trial was the justifiable use of deadly force in self-defense when faced with an imminent threat of death or great bodily harm. On appeal, he argues that the trial court reversibly erred by instructing the jury that possession of a firearm by a convicted felon constitutes unlawful activity because the instruction triggered an evaluation by the jury of whether Garrett had a duty to retreat, when Garrett claims no such duty existed. While we agree that the trial court improperly instructed the jury on this point, we conclude that the error did not rise to the level of fundamental error. Under the complete set of instructions given, the jury was not precluded from excusing Garrett for his deadly act if it believed that the evidence supported his claim of self-defense. We affirm Garrett’s conviction and sentence.
I.
The State’s theory of the case was that the victim, Jerry Ford, was sitting on the front porch of his duplex late one night, unarmed and minding his own business. Earlier the same day, during Ford’s intermittent arguments with Garrett, Garrett left the premises several times and then returned, with their disagreement renewed. When Ford’s girlfriend tried to reduce the tensions, Ford told her to go inside. Shortly after midnight, Garrett completely lost patience and was ready to put an end to the dispute. Holding a firearm behind his back, Garrett returned to the scene and, standing on the sidewalk outside the front gate of the residence, repeatedly fired the weapon in Ford’s direction. As Ford rose from his porch chair to try to save himself, the gunshots took him to the ground. After the shooting, Garrett walked away with the gun in his hand and was heard to remark: “I told you about f-ing with me.” Ford died several hours later. Garrett’s identity as the shooter was not at issue. A neighbor who witnessed the events leading up to the episode did not see anything in Ford’s hands, and law enforcement found no firearm on Ford’s body.
The defense’s theory was that Ford and Garrett had both consumed alcohol and attended a party in a neighbor’s yard earlier that day, although they were not seen at the party at the same time. Ford was sitting on his front porch for much of the day and spent some of that time talking to Garrett. Garrett became increasingly annoyed by Ford’s conduct as the night fell. During a confrontation, Ford was observed softly pushing Garrett. About thirty minutes later, gunshots were heard. The evidence indicated that Garrett discharged a .45-caliber semi-automatic pistol multiple times toward Ford’s porch. Defense counsel argued, however, that Garrett was not the only person armed. A rifle was found in the yard of the duplex after the shooting.
*468 After being read his rights, Garrett gave an interview to the police following the shooting. Garrett stated that Ford had kept “digging at” him and putting his hands in Garrett’s face, despite Garrett’s begging Ford to back off and leave him alone. Garrett admitted repeatedly leaving the scene of the bickering and walking around the corner, only to return each time.
Garrett described to the police the events that immediately preceded the firing of shots. Upon seeing Garrett return to the scene, Ford left his porch, went into his residence, grabbed a .22-caliber long rifle, and came back out with the rifle by his side. Garrett was standing on the sidewalk outside the gate. Garrett told the police that after Ford pointed his rifle at him, Garrett pulled out his own gun and fired multiple shots as Ford ran back toward the porch. As Ford was running, he was trying to cock his rifle at the same time. Garrett admitted continuing to shoot even after Ford dropped his rifle.
After his apprehension, Garrett led law enforcement to a site where he had hidden a .45-caliber semi-automatic pistol, which was operable and had two live rounds in the magazine. Four fired bullets found at the site of the shooting matched Garrett’s pistol. Seven .45-caliber shell casings discovered at the site were fired from that pistol. Ford’s autopsy revealed three gunshot wounds to the back side; the cause of death was multiple gunshot wounds. Garrett did not testify at the trial, but the jury heard his redacted police interview.
The theory of self-defense was that Garrett’s actions constituted justifiable use of deadly force to prevent imminent death or great bodily harm, or the imminent commission of a forcible felony: attempted second-degree murder and/or aggravated battery. The parties stipulated that Garrett had a prior felony conviction. Without an objection, the trial court gave the following written instructions regarding the justifiable use of deadly force:
An issue in this case is whether Antonio Garrett acted in self-defense. It is a defense to the offense with which Antonio Garrett is charged and all lesser included offenses if the death of or injury to Jerry Ford resulted from the justifiable use of deadly force.
“Deadly force” means force likely to cause death or great bodily harm.
The use of deadly force is justifiable only if Antonio Garrett reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another’s attempt to commit Attempted Murder in the Second Degree and/or aggravated battery.
[[Image here]]
A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent:
1. imminent death or great bodily harm to himself or another, or
2. the imminent commission of Attempted Murder in the Second Degree and/or Aggravated Battery, against himself or another.
In deciding whether Antonio Garrett was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing Antonio Garrett need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, Anto *469 nio Garrett must have actually believed that the danger was real.
If Antonio Garrett was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself oh to prevent the commission of a forcible felony.
However, if you find that Antonio Garrett was engaging in unlawful activity then you must consider if Antonio Garrett had a duty to retreat.
Antonio Garrett cannot justify the use of force likely to cause death or great bodily harm unless he used every available means within his power and consistent with his own safety to avoid the danger before resorting to that force. The fact that Antonio Garrett was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if, by retreating, he could have avoided the use of that force. However, if Antonio Garrett was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat then his use of force likely to cause death or great bodily harm was justifiable.
Over objection, the court instructed the jury that “[possession of a firearm by a convicted felon constitutes unlawful activity.”[1]
The jury found Garrett guilty on both counts. He was sentenced to life in prison for first-degree murder, and to a concurrent fifteen-year term for possession of a firearm by a convicted felon.
II.
Garrett contends that the trial court reversibly erred by instructing the jury that “[possession of a firearm by a convicted felon constitutes unlawful activity,” because it required the jury to consider whether Garrett had a duty to retreat. He argues that because he established that his use of deadly force was justified to prevent the imminent commission of a forcible felony, he did not have a duty to retreat, regardless of his unlawful possession of a firearm. In failing to raise this specific legal argument or ground at the charge conference or otherwise at trial, Garrett did not preserve it for appellate review. Occhicone v. State, 570 So.2d 902, 905-06 (Fla.1990); Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla.1987). Accordingly, our review is for fundamental error. See § 924.051(3), Fla. Stat. (2011).
Fundamental error is error that reaches down “into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Maddox v. State, 760 So.2d 89, 96 (Fla.2000). To determine whether fundamental error occurred in the court’s instruction to the jury, we must consider “the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel.” Smith v. State, 76 So.3d 379, 383 (Fla. 1st DCA 2011). Where “the effect of that instruction is to negate the defendant’s only defense, it is fundamental error and highly prejudicial to the defendant.” Carter v. State, 469 So.2d 194, 196 (Fla. 2d DCA 1985).
*470 A.
“[S]elf-defense is ... an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense.” Mosansky v. State, 33 So.3d 756, 758 (Fla. 1st DCA 2010). The law governing the justifiable use of deadly force in self-defense is contained in chapter 776, Florida Statutes (2011), certain provisions of which are colloquially known as the “Stand Your Ground” law. The following two sections of the law are arguably at play:
776.012 Use of force in defense of person. — A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
(Emphasis added).
Section 776.013 is titled “Home protection; use of deadly force; presumption of fear of death or great bodily harm.” Subsection (3) of this provision states:
(3) A 'person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
(Emphasis added).
Garrett argues that he established that his use of deadly force was justified under section 776.012(1) to prevent Ford’s imminent commission of a forcible felony (ie., attempted second-degree murder and/or aggravated battery against Garrett). Therefore, he submits, the court erred by instructing the jury regarding his unlawful activity because it required the jury to consider whether he had a duty to retreat in a situation where no such duty existed. Section 776.012(1) provides that a person using deadly force in circumstances in which the perceived threat of death or great bodily harm is imminent does not have a duty to retreat. While Garrett acknowledges that a “duty to retreat” analysis would be necessary under section 776.013(3) because of his unlawful activity, he contends that sections 776.012 and 776.013 provide separate and distinct bases under which the justifiable use of deadly force may be asserted, so that the “unlawful activity” preclusion in the latter is irrelevant to the operation of the former.
In support of his position, Garrett relies on Little v. State, 111 So.3d 214 (Fla. 2d DCA 2013), which held that a person is not precluded from claiming immunity from criminal prosecution under the circumstances in section 776.012, even though the person was engaged in unlawful activity at the time. Id. at 221-22. The Court reasoned that section 776.032(1), Florida Statutes (2009), provides immunity from criminal prosecution for persons using force as permitted in section 776.012 or section 776.013, and the requirements of each are not identical. Id. Because Little had established by a preponderance of the evidence that his use of force was justified to prevent imminent death or great bodily *471 harm as required in section 776.012(1), he was entitled to immunity, regardless of his status as a felon in illegal possession of a firearm. Id. at 222.
The arguments raised by State in Little are essentially the same as those raised in the instant case. The State maintains that the extraordinary self-defense privilege afforded by the “Stand Your Ground” law is reserved for law-abiding citizens only. It asserts that section 776.012(1) does not provide a basis for a person engaged in unlawful activity to be excused from the use of deadly force in self-defense, for such an interpretation would directly contradict the express legislative intent of section 776.012 and render the “unlawful activity” preclusion of section 776.013(B) meaningless. For the reasons expressed by the Second District Court of Appeal in Little, and those recently articulated in the Fourth District Court of Appeal’s en banc decision in Hill v. State, 143 So.3d 981, 2014 WL 3434445 (Fla. 4th DCA July 16, 2014), we reject the State’s position.
Garrett’s affirmative defense of self-defense, like Little’s claim of immunity, was based on the language in section 776.012. Because Garrett presented some evidence to support his claim of justifiable use of deadly force to prevent imminent death or great bodily harm or the imminent commission of a forcible felony by Ford, Garrett was entitled to request and receive an instruction reflecting section 776.012(1). See Smith v. State, 424 So.2d 726, 732 (Fla.1982) (“[A] defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions.”). .The fact that he was a convicted felon in unlawful possession of a firearm did not apply to the jury’s consideration of whether Garrett had a duty to retreat under section 776.012(1).[2] Therefore, it was error for the trial court to instruct the jury regarding Garrett’s unlawful conduct in relation to his claim of self-defense.
B.
Despite the improper instruction, we do not conclude that the error reached down into the validity of the trial so as to render Garrett’s trial fundamentally unfair. When the entirety of the jury instructions relating to Garrett’s claim of self-defense are considered, the jury was not precluded from considering Garrett’s affirmative defense, regardless of his unlawful activity.
According to Garrett’s version of events, Ford was armed with a .22-caliber long rifle and had just pointed it at Garrett. Garrett pulled out his own gun and fired it in Ford’s direction as Ford ran off while trying to cock his weapon. To prevail on his claim of self-defense, Garrett needed to establish that he had a reasonable belief that his use of deadly force was necessary to prevent the imminent danger presented by Ford. While the improper instruction required the jury to consider whether Garrett had a duty to retreat, the jury was also instructed that if Garrett “was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat then his use of force likely to cause death or *472 great bodily harm was justifiable.” (emphasis added).
Under the complete set of instructions given, the jury could have found that Garrett’s use of deadly force was justified and he had no duty to retreat because retreating would be futile given the “imminence” of the danger he faced. Although the challenged sentence in the instruction raised a “duty to retreat” question, in considering the effect of the instruction in the context of the other instructions given, along with the evidence adduced in the case, we find that the jury was sufficiently instructed on Garrett’s theory of self-defense. There was ample evidence presented for the jury to find that from the beginning of the incident, Garrett did not have a reasonable belief that deadly force was necessary to prevent an imminent threat against him, especially after Ford dropped his rifle and Garrett continued to shoot. That the jury ultimately rejected Garrett’s claim of self-defense does not mean that the challenged instruction constituted fundamental error.
Our reasoning is consistent with the analysis and holding in Hardison v. State, 138 So.3d 1130 (Fla. 1st DCA 2014). Hardison appealed a conviction and sentence for second-degree murder, asserting it was fundamental error to give the standard instruction on the justifiable use of deadly force. Specifically, he contended that the instruction was inconsistent with applicable law, in that it effectively made the defense available only to persons not engaged in unlawful activity. Like Garrett, Hardison was a convicted felon in possession of a firearm at the time of the incident. Id. And as in the instant case, the trial court in Hardison instructed the jury on justifiable use of deadly force, using the standard instruction that tracks section 776.012, combined with instructions relating to section 776.013: “[i]f the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground,” and “[possession of a firearm by a convicted felon is an unlawful activity.” Id. at 1131-32.
At Hardison’s request, however, the judge also instructed the jury that “in certain circumstances, a ' convicted felon may lawfully possess a firearm.” One of those circumstances exists when the felon was in “present, imminent and impending peril of death or serious bodily injury, or reasonably believed himself or others to be in such danger.” Id. In concluding that no fundamental error occurred in Hardison, we determined that this additional instruction kept the jury from assessing Hardi-son’s defense based solely on his unlawful possession of a firearm. Id. at 1135.
[W]hen we consider the complete instruction on justifiable use of deadly force given in this case, we find the jury was sufficiently instructed that, absent a reasonable belief he was under threat of imminent death or great bodily harm, or imminent commission of a forcible felony, Hardison’s use of deadly force in self-defense was not justified. The evidence put before the jury could support a finding that, Hardison’s belief that the threat was imminent was unreasonable, whether or not he was engaged in unlawful activity.
Id. (emphasis in original).
Similarly, when viewing the jury instructions in the instant case as a whole, Garrett’s claim of self-defense turned on whether the evidence before the jury supported a reasonable belief that Garrett was under threat of imminent death or great bodily harm or the imminent commission of a forcible felony by Ford. The erroneous instruction did not affect the jury’s ultimate responsibility to determine *473 whether the threat faced by Garrett was imminent, in which case retreat would be futile and his use of deadly force would be justified, irrespective of whether he was engaged in unlawful activity at the time. Finding no fundamental error, we affirm the conviction and sentence.
CLARK and WETHERELL, JJ., concur.

. During the charge conference, defense counsel asked that this sentence, which the State requested based on Dorsey v. State, 74 So.3d 521 (Fla. 4th DCA 2011), not be read. When asked for the legal basis for the objection, defense counsel stated that the case doesn’t require that the challenged language be included in the jury instruction.

. We note that section 776.012, Florida Statutes (2011), has since been amended to include the "unlawful activity” preclusion contained in 776.013(3). The relevant portion of section 776.012 now reads: "[A] person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.” (emphasis added). Ch. 2014-195, § 3, Laws of Fla. (effective date June 20, 2014).