CRENSHAW, Judge,
Dissenting.
Because I cannot conclude that the trial court’s instruction on Andujar-Ruiz’s duty to retreat constituted fundamental error under these facts, I must respectfully dissent.
The majority asserts that the instructions constitute fundamental error because they deprived Andujar-Ruiz of his sole defense at trial. In my view, a complete fundamental error analysis leads to the conclusion that the jury instructions did not constitute fundamental error in this case. “Where the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is ‘so flawed as to deprive defendants claiming the defense ... of a fair trial.’ ” Martinez v. State, 981 So.2d 449, 455 (Fla.2008) (alteration in original) (quoting Smith v. State, 521 So.2d 106, 108 (Fla.1988)). Even when self-defense is the defendant’s sole defense at trial, “[t]o determine whether fundamental error occurred in the court’s instruction to the jury, we must consider ‘the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel’ ” Garrett v. State, 148 So.3d 466, 469 (Fla. 1st DCA 2014) (quoting Smith v. State, 76 So.3d 379, 383 (Fla. 1st DCA 2011)), review dismissed, 192 So.3d 470 (Fla.2016); see also Dooley v. State, 206 So.3d 87, 2016 WL 6066312 (Fla. 2d DCA Oct. 14, 2016).
Regarding the effect of the erroneous instructions in the context of the other instructions given, I cannot agree with the majority’s conclusion that the trial court’s instruction that Andujar-Ruiz had a right to arm himself did not cure the defect. The unlawful activity highlighted by the majority is Andujar-Ruiz’s illegal possession of a firearm. But the instructions given in this case, unlike those given in Dorsey v. State, 149 So.3d 144, 145 (Fla. 4th DCA 2014), provide that Andujar-Ruiz specifically had the right to arm himself. Having such a right, he would not be engaged in unlawful activity merely by possessing a firearm as a convicted felon under the language used in the jury instructions.
*809 Moreover, the evidence adduced at trial showed that Andujar-Ruiz’s claim of self-defense was extremely weak. First, the State introduced the recording of a 911 call wherein the victim’s girlfriend gave a live narration of the shooting: she first explained that Andujar-Ruiz was harassing them, but just as she began to give the operator her location, she repeatedly shouted that Andujar-Ruiz had shot the victim. The victim and his girlfriend testified that they had prior family disputes with Andujar-Ruiz; Andujar-Ruiz initially testified that there were no prior problems but then admitted on cross-examination that there were. The victim’s girlfriend testified that Andujar-Ruiz had “violently” followed her on two prior occasions, and the victim' corroborated this testimony. The State played several recordings of An-dujar-Ruiz’s conversations fi’om jail. In the first conversation, Andujar-Ruiz asked if the police found anything when they searched his house and explained that he did not know why the police wanted to test his hands for gun residue. Regarding the incident, he stated during the call that “[i]t was early in the morning and [the victim] comes up with a [expletive] hammer. I was like all right [expletive] I went to the house fast. I drove all the way to Sheldon to the Publix and then I turned around (unintelligible).” Andujar-Ruiz contradicted this at trial, testifying that after the hammer incident he simply continued down the road until the victim caught back up with him “not even a minute and a half’ later. Andujar-Ruiz’s .timeline was further contradicted by the testimony of the victim, the victim's girlfriend, her son, and a police officer who was familiar with the distance it would take to drive from where the hammer incident took place to the scene of the shooting. In the next jail conversation, Andujar-Ruiz attempted to arrange a bribe for the victim:
Listen that weekend before I go to that court (unintelligible) [the victim’s] house and give him something and see what he say, all right?”
[[Image here]]
... The one from [the victim] I want you to go with Luz Mari (unintelligible) like a thousand dollars and take it [the victim]. I ain’t going to pay my lawyer. You hear me?
[[Image here]]
... Go to his house, all right. A thousand dollars (unintelligible) that way they won’t go. They are not going to go. I want to make sure—
In a third conversation played for the jury, Andujar-Ruiz again reiterated his intention to bribe the victim not to testify. At trial, Andujar-Ruiz admitted that he initially lied to police by telling them that he was not at the scene of the shooting and that nothing had happened. Andujar-Ruiz’s own father testified that Andujar-Ruiz told him that he shot the victim because “[tjhat’s what [the victim] deserved” for hitting his car with a hammer. His father also explained that the incident happened because of the prior disputes between the cousins and that he had to force Andujar-Ruiz to turn himself in after he initially refused to do so.
Finally, the arguments at trial did not focus on Andujar-Ruiz’s unlawful possession of a firearm or his duty to retreat; instead, they focused on whether or not he was actually in imminent harm and acted in self-defense. Indeed, during closing argument defense counsel explained to the jury:
The issue is was he justified in having imminent danger that he acted in self-defense at that particular moment. Whether you are allowed the gun or not is not the issue. Was he justified at that particular moment?
[[Image here]]
*810 ... The instruction^ ] goes onto read if you consider the defendant because of threats or prior difficulties with [the victim] had reasonable grounds to believe he was in danger of death or great bodily harm at the hands of [the victim] then the defendant had the right to arm himself. Regardless if he’s a convicted felon, regardless if he’s allowed to have guns or not, if under the circumstances he feels because of the prior difficulties that he had reasonable belief that he was in danger of death or great bodily harm at the hands of [the victim] then the defendant had the right to arm himself. That’s the law.
At no point during the trial did anyone ever assert that because Andujar-Ruiz was a convicted felon in possession of a firearm, he had a duty to retreat.
Accordingly, Andujar-Ruiz was not deprived of a fair trial, and the jury was free to consider his theory of self-defense. The jury heard his version of events and rejected that defense at trial. I would deny the petition.