NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MAX GARCIA,                          )
                                     )
            Petitioner,              )
                                     )
v.                                   )          Case No. 2D18-4541
                                     )
STATE OF FLORIDA,                    )
                                     )
            Respondent.              )
                                     )
_____    )

Opinion filed November 27, 2019.

Petition for Writ of Prohibition to the Circuit
Court for Sarasota County; Stephen M.
Walker, Judge.

Victoria E. Hatfield, O'Brien Hatfield, P.A.,
Tampa, for Petitioner.

Ashley Moody, Attorney General,
Tallahassee, and Katie Salemi-Ashby,
Assistant Attorney General, Tampa, for
Respondent.


LaROSE, Judge.

        The State charged Max Garcia with one count of aggravated battery

causing great bodily harm, permanent disability, or permanent disfigurement.

§ 784.045(1)(a)(1), Fla. Stat. (2016).  He now seeks a writ of prohibition after the trial

court denied his "Stand Your Ground" motion to dismiss.  See §§ 776.012 and 776.032,

Fla. Stat. (2016). Because the trial court's order departs from the essential requirements of law, we quash the order under our certiorari jurisdiction. See Amy v. State, 270 So. 3d 1220, 1220 (Fla. 2d DCA 2019) (unpublished opinion) (quashing trial court's order summarily denying petitioner's motion for immunity from prosecution as a departure from the essential requirements of law); Jefferson v. State, 264 So. 3d 1019, 1023 (Fla. 2d DCA 2018) (determining that certiorari is the appropriate remedy when the Stand Your Ground proceeding or the trial court's ruling is flawed by legal error thereby precluding proper determination on the movant's immunity claim).

## Facts

Mr. Garcia was at a nightclub with his friends, Nicole Gruebmeyer, Halley Vanselow, and Michael Maier. While at the club, Ms. Gruebmeyer met the victim, Jordan Melchild. Mr. Melchild invited Ms. Gruebmeyer and Ms. Vanselow to his house. Ms. Gruebmeyer asked if Mr. Garcia and Mr. Maier could come; Mr. Melchild agreed. Mr. Melchild also invited his friend, Tyler Cooper, to stop by. Mr. Cooper met the group later at Mr. Melchild's house.

At Mr. Melchild's house, the group was drinking outside. Another person, Mark Lapp, arrived. Ms. Gruebmeyer, Ms. Vanselow, and Mr. Lapp went into the house and locked themselves in a bathroom, apparently to use drugs. Mr. Melchild went into the house to see what they were doing; Mr. Cooper followed him. Mr. Melchild became angry and dragged Mr. Lapp out of the house.

Mr. Melchild went back inside. Mr. Garcia and Mr. Maier were also inside the house. Mr. Melchild asked them to leave. Mr. Garcia stated that he was waiting for Ms. Gruebmeyer because he was her ride. Mr. Melchild repeatedly asked Mr. Garcia to

leave; he eventually grabbed Mr. Garcia to escort him out. Mr. Garcia resisted and tried to restrain Mr. Melchild. Both men fell to the ground. Mr. Melchild was on top of Mr. Garcia, who was on his back pressed into a corner between a wall and the bathroom door. Mr. Melchild testified that he was not punching or kicking Mr. Garcia.

In contrast, Mr. Garcia testified that after he and Mr. Melchild fell to the ground, Mr. Melchild started slamming his head into the ground. Mr. Cooper entered the fray, punching Mr. Garcia in the face. Mr. Garcia lost his grip on Mr. Melchild and Mr. Melchild started hitting him again. As Mr. Melchild and Mr. Cooper continued punching him, Mr. Garcia saw Mr. Maier coming for Mr. Cooper. Mr. Garcia testified that his head was getting slammed into the ground, he was bleeding, dizzy, and he had two men punching him. At this point, Mr. Garcia grabbed Mr. Melchild's head and pushed his thumb into Mr. Melchild's eye. He was scared and thought it necessary to incapacitate Mr. Melchild because he had no chance of escape.

Mr. Garcia moved to dismiss the charge against him based on the statutory immunity provided by sections 776.032 and 776.012. In his motion, Mr. Garcia argued that Mr. Melchild was the initial aggressor. Mr. Garcia asserted that he was justified in using force to prevent further injury to himself. After an evidentiary hearing, the trial court denied the motion, ruling that: (1) Mr. Garcia was not entitled to immunity because Mr. Melchild used lawful force to remove a trespasser; (2) there was no evidence of any threat of imminent death or great bodily harm to Mr. Garcia, especially where the initial force used by Mr. Melchild was lawful; and (3) Mr. Garcia was engaged in criminal trespass and was not in a place where he had a right to be.

## Analysis

Generally, a petition for writ of prohibition is the proper method for reviewing the denial of a motion to dismiss under the Stand Your Ground law. See Jefferson, 264 So. 3d at 1023 ("[P]rohibition is the appropriate remedy when the appellate court determines on the merits that the defendant is entitled to immunity under the Stand Your Ground law, the reason being that the lower court has no authority to proceed against an immunized defendant."); Little v. State, 111 So. 3d 214, 216 n.1 (Fla. 2d DCA 2013). But, because the trial court erred in its construction of the Stand Your Ground statute, we are unable to determine whether Mr. Garcia is entitled to immunity on the merits. Thus, prohibition is not the appropriate vehicle under which to proceed. We best proceed under our certiorari jurisdiction. Jefferson, 264 So. 3d at 1023.

Section 776.032(1) provides immunity to a person using force as permitted in sections 776.012, 776.013, or 776.031. Section 776.012(1) authorizes the use of nondeadly force when a defendant reasonably believes such force is necessary to defend himself or herself against another's imminent use of unlawful force. There is no duty to retreat before using nondeadly force under section 776.012(1). Under section 776.012(2), a defendant is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself, or to prevent the imminent commission of a forcible felony. Under section 776.012(2), a person who uses deadly force does not have a duty to retreat and has the right to stand his or her ground if he or she is not engaged in a criminal activity and is in a place where he or she has a right to be.

- 4 -

An objective standard applies in evaluating the facts presented in a Stand Your Ground motion to dismiss. Mobley v. State, 132 So. 3d 1160, 1164 (Fla. 3d DCA 2014). The trial court must determine whether, based on the circumstances as they appeared to the defendant, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant. Toledo v. State, 452 So. 2d 661, 662-663 (Fla. 3d DCA 1984).

The trial court found that any force used by Mr. Melchild was lawful to remove Mr. Garcia, a trespasser. In the trial court's view, Mr. Garcia was not entitled to immunity under section 776.012(1) because he was not defending against the imminent use of unlawful force. As the State concedes, these findings are wrong as a matter of law.

The trial court cited to sections 776.031(1) and 776.013(1) when it found that Mr. Melchild's initial use of force was lawful. Section 776.031(1) governs the use of nondeadly force in defense of property; a person is justified in using nondeadly force against another when that person reasonably believes such conduct is necessary to terminate the other's trespass on either real property <u>other than a dwelling</u> or personal property lawfully in his possession. § 776.031(1) (emphasis added); <u>see also</u> § 776.013(5)(a) (defining "dwelling"). Section 776.031(1) does not apply to a dwelling and is inapplicable to Mr. Melchild's initial use of force.

Section 776.013 provides that a person who is in a dwelling or residence is permitted to use nondeadly force against another if the person reasonably believes such conduct is necessary to defend against the other's imminent use of unlawful force.

See § 776.013(1)(a). No evidence suggested that Mr. Melchild's initial use of force was necessary to defend against any imminent use of unlawful force by Mr. Garcia.

The trial court also concluded that section 776.012(2) only applies if the person using deadly force is not engaged in a criminal activity and is in a place where he has a right to be. According to the trial court, Mr. Garcia was not entitled to immunity under section 776.012(2) because he was a trespasser at the moment leading to the affray.

A defendant who is engaged in unlawful activity or who is in a place where he does not have a right to be, has a duty to retreat and must use all reasonable means in his power, consistent with his own safety, before his use of deadly force will be justified under the Stand Your Ground law. See Jenkins v. State, 942 So. 2d 910, 914 (Fla. 2d DCA 2006) (explaining the duty to retreat means to "retreat to the wall" and includes the use of all reasonable means, consistent with the defendant's own safety, to avoid the danger and to avert the necessity of taking human life); Wyche v. State, 170 So. 3d 898, 905 (Fla. 3d DCA 2015) (holding if a person is engaged in unlawful conduct or initially provoked the use of force against himself, that person has the duty to retreat and/or withdraw from physical contact with the assailant before he may rely on the defenses contained in chapter 776). A defendant is not foreclosed from defending himself simply because he is in a place where he does not have the right to be, but he must first attempt to retreat from the situation if he can do so safely. Thompson v. State, 552 So. 2d 264, 266 (Fla. 2d DCA 1989) (holding if a person is in a place where he does not have a right to be, he has a duty to retreat before using deadly force on the

attacker, but deadly force is justifiable if retreat would be futile).  The trial court's finding failed to consider whether Mr. Garcia was able to retreat prior to his use of force.

Finally, the trial court failed to make any finding regarding whether Mr. Garcia reasonably believed his use of force was necessary to prevent imminent death or great bodily harm, or to prevent the commission of a forcible felony.  To make that determination, the trial court must consider the circumstances Mr. Garcia faced.  See Garrett v. State, 148 So. 3d 466, 468 (Fla. 1st DCA 2014).  "[T]o justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force."  Id.  Although the trial court found no competent, substantial evidence of a threat of imminent death or great bodily harm to Mr. Garcia, it did not consider whether, based on the circumstances as they appeared to Mr. Garcia when he acted, a reasonably prudent person would have used the same force.  Nor did the trial court make any findings regarding whether Mr. Garcia reasonably believed his use of force was necessary to defend against the imminent commission of a forcible felony.

**Conclusion**

Because the trial court erred in its legal conclusion that Mr. Melchild's initial use of force was lawful, which prevented Mr. Garcia from asserting immunity under section 776.012(1), and in its conclusion that section 776.012(2) applies only if the defendant was in a place where he had a right to be at the time of the incident, we grant the petition and quash the order denying Mr. Garcia's motion.  We leave it to the

trial court to consider the motion under a proper construction of the Stand Your Ground law.

        Petition granted.


KELLY and BADALAMENTI, JJ., Concur.