MARSTILLER, J.
Appellant, Anthony Robinson, seeks reversal of his convictions for attempted second-degree murder with actual possession and discharge of a firearm during commission, carrying a concealed firearm, possession of a firearm by a minor, discharging a firearm from a vehicle, and possession of a firearm by a juvenile found to have committed a felony act. He argues the trial court erred by (1) denying his motion to suppress his confession when the confession was unlawfully obtained by promises of leniency, and (2) ruling that granting his request for a justifiable-use-of-deadly-force jury instruction would require letting the State reopen its case to put on additional evidence to rebut the claim of self-defense. For the following reasons, we conclude no reversible error occurred, and therefore, affirm Robinson’s convictions.
First, the lower court’s ruling on the motion to suppress rested solely on an assessment of statements the interrogating detective made to encourage Robinson to confess. The court considered both the detective’s testimony at the suppression hearing and a videotape of the entire interrogation which captured the- detective’s precise statements. From that evidence, the court concluded the statements did not support Robinson’s claim he was led to believe that if he confessed he would be prosecuted as- a juvenile. The court’s written order on the-motion states, in pertinent part:
*889 The videotaped comments by the Detective do not factually support the Defendant’s position. During the interview, the Detective told the Defendant that they had spoken with all of his friends, had plenty of evidence to make the case that the Defendant shot at the victim, and that the Defendant was going to be arrested no matter what. The Detective implored the [Defendant] several times to “tell the truth” and to “do the right thing.” The Detective was clear that all he could do was go to the State Attorney and tell him or her that the Defendant told the truth, and that he could testify at his sentencing that the Defendant told the truth and was remorseful.... At no time did anyone in the interview ever promise the Defendant that he would be treated as a juvenile if he confessed. There was no improper inducement, factual misrepresentation about the investigation or deception that' might call into question the validity- of the Defendant’s confession.
Based, as it was, solely on a factual determination and not on the application of facts to law, we review the trial court’s denial of Robinson’s motion to suppress only to see whether the ruling is supported by competent, substantial evidence. See generally State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). It is so supported, and thus, must be affirmed.
Second, as to the justifiable-use-of-deadly-force instruction, based on recent decisions from this court and other district courts holding that a person may claim justifiable use of deadly force under section 776.012(1), Florida Statutes,[1] even if he was engaged in unlawful activity, the trial court incorrectly stated that granting Robinson’s request for an instruction under section 776.012(1) required allowing the State to put on evidence showing he was engaged in unlawful activity — possession of a firearm by a juvenile adjudicated delinquent — and thus, had a duty to retreat before using deadly force.[2] See McGriff v. State, 160 So.3d 167, 168-69 (Fla. 1st DCA 2015); Garrett v. State, 148 So.3d 466, 471 (Fla. 1st DCA 2014); Hardison v. State, 138 So.3d 1130, 1134 (Fla. 1st DCA 2014); Rios v. State, 143 So.3d 1167, 1169-70 (Fla. 4th DCA 2014); Hill v. State, 143 So.3d 981, 984 (Fla. 4th DCA 2014) (en banc); Little v. State, 111 So.3d 214, 219-22 (Fla. 2d DCA 2013).[3]
*890 Nevertheless, reversing Robinson’s convictions is not justified under the circumstances here for he has not shown he was deprived of his defense. “A defendant is deprived of a fair trial if the error [in giving a jury instruction] divests the defendant of his or her ‘sole, or ... primary defense strategy’ and that defense is supported by evidence adduced at trial that could not be characterized as ‘weak.’ ” McCoy v. State, 56 So.3d 37, 40 (Fla. 1st DCA 2010) (quoting Martinez v. State, 981 So.2d 449, 455-57 (Fla.2008)). First, the trial court, in fact, neither denied Robinson’s request for the justifiable-use-of-deadly-force jury instruction nor incorrectly instructed the jury. Although he asserts on appeal he was forced to abandon his defense because of the trial court’s incorrect ruling on the issue of unlawful activity and duty to retreat, the record does not substantiate the assertion. Rather, the record shows defense counsel, with Robinson’s agreement, strategically withdrew the request for the instruction after the court agreed to give it, effectively abandoning Robinson’s defense[4] and arguably waiving the error.
Second, Robinson has not demonstrated that, had the trial court given the justifiable-use-of-deadly-force instruction without reference to unlawful activity and duty to retreat, the evidence could have supported a finding that his shooting at the victim was justified. The following provision in the standard jury instruction is to be read in all cases where self-defense is claimed, whether or not the duty to retreat is at issue:
In deciding whether defendant was justified in the use of deadly force, you must judge [him] [her] by the circumstances by which [he] [she] was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.
Fla. Std. Jury Instr. (Crim.) 3.6(f) (emphasis added). During his videotaped confession, which the jury viewed at trial, Robinson summarized how the shooting went down:
DETECTIVE NELSON: So tell us one more time what took place tonight.
MR. ROBINSON: We was at the check cashing place.
DETECTIVE NELSON: Okay, “we” is who?
*891 MR. ROBINSON: (Inaudible).
DETECTIVE NELSON: Who is “we”?
MR. ROBINSON: Me, . BJ [Byron Spencer], and the two girls. And we was outside rappin.or whatever. Then BJ and the other girl had got back in the car, and we was outside or whatever. Then we seen Morris [Henderson], So BJ got out of the car and was like, Hey, man, just give me a one on one fade or whatever and everything be quashed. And Morris was like, All right, hold on, sit right there, and drove off real fast or whatever like he was going to get somebody. And I was like, Bro, follow him. So we got — me and the other girl got back in the car, followed him or whatever, and then
DETECTIVE NELSON: Were you speeding behind him?
MR. ROBINSON: Speeding? No, weren’t really speeding ‘cause I wasn’t as— matter of fact I told him not' to speed, to make seem to — to make it seem like we weren’t following him, like to make it seem like (inaudible) so he wouldn’t think nobody following him. DETECTIVE NELSON: Okay, go on. I’m sorry. So ...
MR. ROBINSON: And then from there he just drove on the side, tried to ram him or whatever. That’s when I shot— shot — shot—that’s when I shot at the car.
At trial, Robinson testified he was listening to music in the parking lot of the check cashing business when he saw B.J. approach the window of the ear driven by Henderson, then walk quickly back to his car. B.J. followed and caught up to Henderson, and the cars proceeded down the street ramming each other. As this was happening, B.J. told Robinson to shoot the tire of Henderson’s car, which he did— firing two or three shots at the car— intending to hit the left rear tire, but apparently hitting Henderson. Importantly, Robinson did not testify he feared imminent death or great bodily injury during the episode.
The evidence, then, does not establish that. Robinson was in actual fear of mortal or grave physical danger. Neither does it support a reasonable belief on Robinson’s part that any danger could have been avoided only by using deadly force. Thus, any self-defense claim was not supported by evidence adduced at trial. See McCoy, supra. Rather, the evidence showed Robinson was a backseat passenger in a car driven by someone, B.J., who had a beef with Henderson, who pursued Henderson’s car and rammed it first, and who told Robinson to shoot at Henderson’s tires. Robinson’s real defense, as argued by his counsel in closing and for which there was evidentiary support, was that he did not shoot at Henderson, and he never intended to do so.
Finding no reversible error by the trial court, we affirm Robinson’s convictions and sentences.
AFFIRMED.
ROBERTS, C.J., and SWANSON, J., concur.

.
776.012 Use of force in defense of pérson.— A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessaiy to defend himself or herself against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
§ 776.012, Fla. Stat. (2006).

. Compare the provision commonly known as the Stand Your Ground law:
776.013 Home protection; use of deadly force; presumption of fear of death or great bodily harm. — .
(3)A person who is not engaged in an unlawful activity and who is attacked in any other place [than a dwelling, residence or vehicle] where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another- or to prevent the commission of a forcible felony.
§ 776.013(3), Fla. Stat. (2006) (emphasis added).

. We recognize that, because Robinson’s trial occurred in October 2012, well before these appellate decisions were published, the trial *890 court did not have the benefit of the decisions when making its ruling.

.
[DEFENSE COUNSEL]: Judge, on — back on the record regarding — you’ve given me time to speak to my client regarding the justifiable use of deadly force as basically a claim of self-defense. I explained to him. I went over the language with him on self-defense and what it would entail, explained to him that based on the fact that if he wanted this instruction, that the state has a right to reopen their case and put on for limited purposes that he was an adjudicated delinquent, because it is pertinent regarding the last paragraph of the second page [of the standard jury instruction] that says if the jury does find that he was engaged in unlawful activity, which through testimony, the jury could determine that based on the possession of — or his statements regarding possession of a firearm, they so believe that, then he has a duty to retreat, and then there is language in there that basically negates the self-defense claim. So my client has basically agreed to delete the justifiable use of deadly force instruction and to proceed with the case as being closed[.]