NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,⁣ )
)
　　　　Appellant, )
)
v. )　　Case No. 2D15-5129
)
JUDITH WINA TRAPPEN, )
)
　　　　Appellee. )
　　　　　　　　　　　　　　　　　　　　)

Opinion filed June 30, 2017.

Appeal from the Circuit Court for
Hillsborough County; Samantha L. Ward,
Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Chelsea S. Alper,
Assistant Attorney General, Tampa, for
Appellant.

Leon H. Jones of LHJ Law, Tampa, for
Appellee.

SALARIO, Judge.

　　　　The State appeals from a final order that granted Judith Trappen's motion

to dismiss filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). We hold

that the undisputed allegations of Ms. Trappen's motion and the State's traverse made

out a prima facie case that Ms. Trappen violated section 790.23(1), Florida Statutes (2014), which makes it unlawful for a felon "to own or to have in his or her care, custody, possession, or control any firearm." Accordingly, we reverse and remand for further proceedings.

In a one-count information, the State charged Ms. Trappen with violating section 790.23(1). Tracking the statutory language, the State alleged that Ms. Trappen, who had been convicted in 2006 of a felony for obtaining property in exchange for a worthless check for more than $150, violated section 790.23(1) in December 2014.

Ms. Trappen filed a verified motion to dismiss pursuant to rule 3.190(c)(4) in which she alleged that her husband, a gun enthusiast who owned multiple firearms, passed away in November 2014. According to the motion, Ms. Trappen was strapped for cash while waiting on payments from her husband's life insurance and decided to sell her husband's guns. She and a friend went to a pawn shop, where Ms. Trappen submitted her fingerprint and sold the firearms. According to the pawn shop employee's deposition, the employee could not remember the events in any detail and, in particular, could not remember whether Ms. Trappen actually touched the guns at any point. The arresting detective, who was also deposed, did not witness the events.

Based on these allegations, Ms. Trappen asserted two legal bases for dismissal under rule 3.190(c)(4). First, she asserted that under the undisputed facts the State could not make a prima facie case that she actually possessed a firearm because no witness could testify that she actually touched any firearm and, even if she did, the State could not show "that the touching was in a manner that the statute intended to forbid." Second, relying on Henderson v. United States, 135 S. Ct. 1780 (2015), a

decision of the United States Supreme Court interpreting the federal felon in possession statute, Ms. Trappen argued that the State could not make out a prima facie case that she constructively possessed the firearms.

The State filed a traverse pursuant to rule 3.190(d) that admitted the material allegations of Ms. Trappen's motion but included additional facts. It alleged that Ms. Trappen admitted to the arresting detective that "she took the firearms and pawned them." It also said that Ms. Trappen personally completed the paperwork and answered all questions related to the sale, put her thumbprint on a transaction form indicating that she owned the firearms, and took money from the pawn shop in exchange for the firearms. Based on these allegations, the State argued that it had made a prima facie case that Ms. Trappen constructively possessed the firearms and that the federal statute at issue in Henderson was distinguishable from the language of section 790.23(1) such that the reasoning of that case could not be applied here.

At a hearing on the motion to dismiss, Ms. Trappen admitted the additional facts alleged in the State's traverse. Without hearing argument, the trial court announced that Ms. Trappen's motion would be granted. The trial court later entered a written order consistent with its oral ruling. The State timely appeals.

We review an order granting a rule 3.190(c)(4) motion de novo. Bell v. State, 835 So. 2d 392, 394 (Fla. 2d DCA 2003). The purpose of the rule 3.190(c)(4) procedure is to avoid a trial in a criminal case when there are no material facts genuinely at issue. State v. Kalogeropolous, 758 So. 2d 110, 111 (Fla. 2000). Under that procedure, a defendant may seek dismissal where "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." Fla. R. Crim.

- 3 -

P. 3.190(c)(4). "It is the defendant's burden to demonstrate that no prima facie case exists upon the undisputed facts set forth in detail in the motion." State v. Cadore, 59 So. 3d 1200, 1202 (Fla. 2d DCA 2011) (citing Kalogeropolous, 758 So. 2d at 111). Where, as here, the State responds to a motion to dismiss with a traverse admitting the material facts and adding new facts of its own, the question for the trial court is whether the State can show that the undisputed facts make out a prima facie case of the defendant's guilt. See State v. Dickerson, 811 So. 2d 744, 746 (Fla. 2d DCA 2002); see also Fla. R. Crim. P. 3.190(d).

In assessing whether there is a prima facie case of guilt set forth on the facts presented, the evidence must be taken in the light most favorable to the State, with all inferences resolved against the defendant. State v. Pasko, 815 So. 2d 680, 681 (Fla. 2d DCA 2002); see also Bell, 835 So. 2d at 394. The State is not required to produce all of the facts or evidence it might present at a trial, Kalogeropolous, 758 So. 2d at 112, nor is it required to produce facts and evidence that would survive a motion for judgment of acquittal, Dickerson, 811 So. 2d at 747. Instead, it is "only where the most favorable construction to the state" of the facts in the motion and traverse would fail to establish a prima facie case of guilt that a rule 3.190(c)(4) motion should be granted. Pasko, 815 So. 2d at 681 (quoting State v. Hunwick, 446 So. 2d 214, 215-16 (Fla. 4th DCA 1984)).

Under these standards, we agree with the State that the factual allegations of the motion taken together with the facts added by its traverse present a prima facie case that, at a minimum, Ms. Trappen constructively possessed a firearm in

violation of section 790.23(1).[1] See Bundrage v. State, 814 So. 2d 1133, 1134 (Fla. 2d DCA 2002) ("Possession of a firearm by a convicted felon can be proven either by an actual or a constructive possession theory."). To survive Ms. Trappen's rule 3.190(c)(4) motion on a constructive possession theory, the State needed to show a prima facie case that Ms. Trappen knew the gun was present and had the ability to exercise control over it. See Watson v. State, 961 So. 2d 1116, 1117 (Fla. 2d DCA 2007) (explaining elements of proof for felon in constructive possession of a gun).

The undisputed facts in the motion and traverse make out a prima facie case of knowledge of the firearms and the ability to control them. Ms. Trappen's own allegations are that she made a decision to pawn the guns and that she and a friend went to a pawn shop to make that happen. Those allegations are direct evidence of Ms. Trappen's knowledge of the guns, inasmuch as it would have been impossible for her to execute a plan to sell them without knowing about them, and are at a minimum circumstantial evidence of her ability to control them, inasmuch as a fair inference from the fact that she pawned them is that she had the ability to control them. See Cadore, 59 So. 3d at 1203-04 (holding that entirely circumstantial evidence of constructive possession was sufficient to overcome rule 3.190(c)(4) motion to dismiss). Moreover, Ms. Trappen's own statement—as provided by the State's traverse—that "she took the firearms and pawned them" can reasonably be interpreted as an admission of both

---

[1]In its opposition to the motion to dismiss in the trial court, the State argued only constructive possession. It did not argue that Ms. Trappen actually possessed a firearm or that she violated the felon in possession statute in another specified way. See § 790.23(1) (prohibiting a felon from owning a firearm or having care, custody, or control of a firearm). Because we can resolve this appeal solely on the ground argued by the State in the trial court, we need not consider whether the State preserved any other grounds or whether such grounds would have merit.

knowledge of and the ability to control the firearms as the act of taking and pawning the firearms implies both. See Dickerson, 811 So. 2d at 747 (reversing rule 3.190(c)(4) dismissal where the State's traverse alleged that defendant admitted to knowing of the presence of contraband).

Ms. Trappen, however, argues that the United States Supreme Court's decision in Henderson shows that the concept of constructive possession cannot operate to extend section 790.23(1) to the facts of this case. In Henderson, the Court interpreted the federal felon in possession statute, then in effect, 18 U.S.C. § 922(g), which made it unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." There, a federal felon who had surrendered his firearms to the FBI later asked the FBI to transfer them to a friend who he said had agreed to buy them. 135 S. Ct. at 1783. The FBI refused on grounds that the transfer would place the felon in constructive possession of the firearms in violation of § 922(g). Mr. Henderson then filed a petition seeking to compel the transfer of the firearms to his wife or the friend, which a federal district court denied. The Eleventh Circuit Court of Appeals affirmed. Id. at 1783.

The Supreme Court reversed and held that the federal felon in possession statute did not reach as far as the lower courts had held. While recognizing the argument that § 922(g) "prevents a court from ordering the sale or other transfer of a felon's gun to someone willing to give the felon access to them or to accede to the felon's instructions about their future use" because this would amount to constructive possession, id. at 1784, the Court explained that interpreting the statute to prohibit a felon from disposing of his guns through another "wrongly conflates the right to possess

- 6 -

a gun with another incident of ownership, which § 922(g) does not affect: the right merely to sell or otherwise dispose of that item;" id. at 1785. The Court emphasized that "[s]ection 922(g) proscribes possession alone" and "[b]y its terms, [§] 922(g) does not prohibit a felon from owning firearms." Id. at 1784. Because the statute did not regulate ownership of guns, the Court reasoned, a convicted felon retains the right to sell or dispose of his guns. Id. at 1784-85. The Court also reasoned that a construction of the term "possession" that precluded such a sale extended § 922(g) beyond its purpose because it would prevent a felon from disposing of firearms in a way that would guarantee that the felon never used those firearms again. Id. at 1786. It ultimately held that so long as "a court is satisfied that a felon will not retain control over his guns, § 922(g) does not apply," and a court may act within its equitable power to grant a felon's request that his or her firearms be transferred to a particular person. Id. at 1787.

Ms. Trappen's argument that "[b]ased upon the rationale of Henderson," the State "cannot prove that [she] constructively possessed the firearms" at issue misunderstands that case. Henderson hinged on the fact that the interpretation of the statutory term "possession" endorsed by the lower courts interfered with a legal activity § 922 did not reach—the ownership of a firearm by a felon. Legal ownership necessarily includes the right to dispose of what one owns, and prohibiting a felon from disposing of a firearm he owns prohibits that which the statute, by its terms, actually permits. See id. at 1174-75. Section 790.23(1), however, does not present that issue; by its terms, it criminalizes both possession and ownership of a firearm by a felon. § 790.23(1) (making it a crime for a felon to "own . . . any firearm" (emphasis added)).

The Florida statute thus does not require that we confront the interpretative problem in the federal statute with which the Henderson Court was presented.

Moreover, Henderson is distinguishable in two critical respects. First, even assuming that the Florida statute permitted ownership of a firearm by a convicted felon, the undisputed facts here, unlike the facts in Henderson, do not establish that Ms. Trappen in fact owned the firearms. Ms. Trappen's motion alleged only that the firearms were her husband's, that her husband died, and that after her husband died, she decided to sell them. It is certainly possible on those facts that Ms. Trappen became the owner of those firearms through inheritance or some other means—and this opinion does not restrict either Ms. Trappen or the State from making that case on remand—but it is also possible that the firearms were part of an estate being administered in probate or that Ms. Trappen's husband had by will devised the firearms to someone else or that some other circumstance existed that prevented Ms. Trappen from claiming ownership of her husband's firearms, such that she had no right to dispose of them. See ch. 732, Fla. Stat. (2014) (governing intestate succession and wills). In Henderson, the felon's ownership of the firearms was a given, and the Court's application of the statutory term "possess" depended on his having the right to dispose of the firearms that is an incident of ownership. The allegations of Ms. Trappen's motion do not establish that right, however, and on that score her motion failed to meet her burden of demonstrating that, on the undisputed facts, the State could not make out a prima facie case of guilt.[2] See

[2]Ms. Trappen argues for the first time on appeal that she possessed the firearms for the purpose of lawful disposal. Florida courts have recognized a defense to a prosecution for possession of a controlled substance based on temporary possession for the sole purpose of lawful disposal. See, e.g., Robinson v. State, 57 So. 3d 278, 281 (Fla. 4th DCA 2011) ("We have previously recognized that temporary control of

- 8 -

Kalogeropolous, 758 So. 2d at 111 ("Under this rule it is the defendant's burden . . . to demonstrate that no prima facie case exists upon the facts set forth in detail in the motion.").

In addition, in Henderson, unlike this case, the lower courts interpreted "possession" to reach a transaction in which the felon's involvement was quite attenuated.  Mr. Henderson's only participation was selecting the person to whom ownership of the firearm would pass; apart from that, the weapon would pass from the FBI to Mr. Henderson's friend without his involvement.  As the Supreme Court recognized, saying that those circumstances constitute constructive possession is in tension with the element of control underlying that concept precisely because Mr. Henderson's ability to exert influence over the firearm was attenuated.  See 135 S. Ct. at 1785 (reasoning that constructive possession is designed to preclude a situation in which "the felon would have control over the guns, even while another person kept physical custody" and to "allow[] the law to reach beyond puppets to puppeteers"

---

contraband for the purpose of legal disposition by throwing it away, destroying it, or giving it to police can be a valid defense to the crime of possession of a controlled substance."); Fla. Std. Jury Instr. (Crim.) 3.6(m) ("It is a defense to the charge of [possession of a controlled substance] [trafficking via possession] for a person to briefly possess a controlled substance for the sole purpose of legal disposal."); cf. Marrero v. State, 516 So. 2d 1052, 1054 (Fla. 3d DCA 1987) (discussing necessity defense and noting that "the law has long recognized that there may be circumstances under which a convicted felon's possession of a firearm would be justified" in the case of self-defense). We have found no case adopting that defense in a prosecution for felon in possession of a firearm, but cf. West v. State, 69 So. 3d 1075 (Fla. 1st DCA 2011) (assuming without comment that the defense exists), and Ms. Trappen has not developed the argument beyond half a sentence in her brief.  She did not make this argument in the trial court, and her motion does not develop the alleged record necessary to make out the defense under the rule 3.190(c)(4) standard.  See State v. Quetglas, 901 So. 2d 360, 362 (Fla. 2d DCA 2005) (stating that it is the defendant's burden on a rule 3.190(c)(4) motion to show that the undisputed facts make out a valid defense).

(quoting United States v. Al-Rekabi, 454 F.3d 1113, 1118 (10th Cir. 2006))). In contrast, Ms. Trappen's ability to exert influence over the firearms here was, on the facts alleged in the motion and traverse, quite direct: she made the decision to sell them, she took them to the pawn shop with a friend, she walked into the pawnshop with her friend and the guns, and she transferred the guns to the pawn shop in exchange for money, using her own fingerprint to do so. As described above, her involvement in the transaction virtually required that she have had the ability to exercise control over her husband's firearms and is thus quite consistent with the concept of constructive possession as typically understood in Florida.

If the facts alleged in the motion and traverse are really all there is, one might fairly wonder why the State would bring this kind of prosecution. But on the limited facts in the motion and traverse we do not know whether that is really all there is, and nothing about this case suggests that the State's reasons for bringing the prosecution are legally relevant at this stage of the proceedings. The only legally proper consideration at present is whether the facts alleged in the motion and traverse make out a prima facie case that Ms. Trappen violated section 790.23(1). They do. We therefore reverse the trial court's dismissal order and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

SILBERMAN and CRENSHAW, JJ., Concur.